# EXHIBIT A

PANISH | SHEA | RAVIPUDI LLP
BRIAN J. PANISH, State Bar No. 116060
*panish@panish.law*
JESSE CREED, State Bar No. 272595
*jcreed@panish.law*
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699

**Electronically FILED by Superior Court of California, County of Los Angeles 5/12/2026 10:43 AM David W. Slayton, Executive Officer/Clerk of Court, By Y. Ayala, Deputy Clerk**

SALKOW LAW A.P.C
RICHARD SALKOW, State Bar No. 204572
*rsalkow@salkowlaw.com*
1541 Ocean Ave., Suite 200
Santa Monica, CA 90401
Telephone: 310.914.8484
Facsimile: 760.406.4097

SCHMIDT NATIONAL LAW GROUP
MARTIN SCHMIDT, State Bar No. 171673
*mschmidt@nationalinjuryadvocates.com*
3033 Fifth Ave., Suite 335
San Diego, CA 92103
Telephone: 800.631.5656

Attorneys for Plaintiff

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

A.Z.R., a minor, by and through Scott R., as Guardian Ad Litem,

Plaintiff,

v.

ROBLOX CORPORATION, a Delaware corporation; and DOES 1-50,

Defendants.

Case No. 26STCV15069

**COMPLAINT**

1. **FRAUDULENT CONCEALMENT AND MISREPRESENTATION**
2. **NEGLIGENT MISREPRESENTATION**
3. **NEGLIGENCE – GENERAL**
4. **NEGLIGENCE – FAILURE TO WARN**
5. **NEGLIGENCE – UNREASONABLE DESIGN**
6. **NEGLIGENT UNDERTAKING**
7. **STRICT LIABILITY – DESIGN DEFECT**
8. **STRICT LIABILITY – FAILURE TO WARN**

Action Filed:
Trial Date:



PANISH | SHEA | RAVIPUDI LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. PARTIES ..... 3
III. JURISDICTION AND VENUE ..... 3
IV. GENERAL ALLEGATIONS ..... 4
A. Roblox Was Created and is Advertised as a Children's Game. ..... 4
B. Roblox Persistently Misrepresents the Safety of its Platform to Parents. ..... 7
C. The Reality of Roblox: A Predator's Dream and a Parent's Nightmare. ..... 9
D. The Real World Harm Caused by Roblox. ..... 16
E. Roblox Knowingly Facilitates Sexual Exploitation of Children. ..... 19
1. Roblox prioritizes growth over child safety ..... 19
2. Roblox consciously decided not to implement basic safety features ..... 21
3. Roblox's recent safety changes are woefully inadequate ..... 26
F. Roblox Acts as a Feeder App to Games Like Gacha Life... ..... 29
1. Gacha Life publicly misrepresents itself as appropriate for all ages ..... 29
2. Gacha Life's well-known facilitation of sexual exploitation ..... 30
3. Gacha Life's refusal to implement any safety features ..... 34
V. PLAINTIFF-SPECIFIC ALLEGATIONS ..... 37
VI. CAUSES OF ACTION ..... 39
FIRST CAUSE OF ACTION FRAUDULENT CONCEALMENT AND MISREPRESENTATIONS (By Plaintiff Against Each Defendant) ..... 39
SECOND CAUSE OF ACTION NEGLIGENT MISREPRESENTATION (By Plaintiff Against Each Defendant) ..... 41
THIRD CAUSE OF ACTION NEGLIGENCE (By Plaintiff Against Each Defendant ..... 42

PANISH | SHEA | RAVIPUDI LLP

FOURTH CAUSE OF ACTION
NEGLIGENCE - FAILURE TO WARN
(By Plaintiff Against Each Defendant)....48

FIFTH CAUSE OF ACTION
NEGLIGENCE - UNREASONABLE DESIGN
(By Plaintiff Against Each Defendant)....51

SIXTH CAUSE OF ACTION
NEGLIGENT UNDERTAKING
(By Plaintiff Against Each Defendant)....55

SEVENTH CAUSE OF ACTION
STRICT LIABILITY - DESIGN DEFECT
(By Plaintiff Against Each Defendant)....57

EIGHTH CAUSE OF ACTION
STRICT LIABILITY
(By Plaintiff Against Each Defendant)....61

VII. PRAYER FOR DAMAGES....65

VIII. DEMAND FOR JURY TRIAL....65

PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

Plaintiff A.Z.R. ("Plaintiff"), by and through her Guardian Ad Litem, Scott R., brings this action against Roblox Corporation ("Roblox"), and Does 1-50 (collectively, "Defendants") to recover damages arising from severe injuries caused by Defendants' respective conduct in creating, designing, marketing, and distributing their mobile and web-based applications ("apps"), and alleges as follows:

## I. <u>INTRODUCTION</u>

1. This action seeks to hold Roblox accountable for recklessly and deceptively operating its business in a way that led to the sexual exploitation of Plaintiff. The heinous acts against Plaintiff were committed by a dangerous child predator whose actions were possible only because of the egregiously tortious conduct of Defendants. The predator first encountered Plaintiff on Roblox and convinced her to move to an app called Gacha Life, developed by Lunime, Inc., where the sexual exploitation continued and amplified.

2. Through their pervasive patterns of misrepresentations about safety, Defendants portray their apps as safe and appropriate places for children to play. In reality, and as Defendants well know, the design of their apps makes children easy prey for pedophiles, and Defendants had no appropriate safeguards to ensure that children were in fact safe or that predators were screened. There are steps that Defendants could have taken to protect children and to make their apps safer. But time and time again Defendants refused to invest in basic safety features to protect against exactly the kind of exploitation that Plaintiff suffered.

3. The reason for Defendants' unlawful conduct is simple: Defendants prioritize user growth over child safety. As one former Roblox employee explained in describing the company's approach to child safety, "You have to make a decision, right? You can keep your players safe, but then it would be less of them on the platform. Or you just let them do what they want to do. And then the numbers all look good and investors will be happy."[1] As of early 2026, Roblox boasts 144 million daily users and a staggering 35 billion hours of usage.[2] Gacha Life has over 100 million

[1] *Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids*, Hindenburg Research (Oct. 8, 2024), https://hindenburgresearch.com/roblox/.
[2] Roblox, *About Us,* https://about.roblox.com (last visited April 30, 2026).

downloads.[3] Defendants' clear prioritization of growth over the safety of children has devastated the lives of many children who use their apps.

4. Plaintiff is one of those children. Plaintiff struggled with delayed speech and showed signs of Autism at 7 years old. This made it difficult for Plaintiff to play with and befriend other children. Plaintiff relied heavily on Roblox for social interaction, making her a prime target for the countless child predators that Roblox knew were freely roaming the app looking for vulnerable children. Plaintiff was targeted on Roblox by a child predator who engaged in textbook grooming behavior that Roblox has known about for years. The predator posed as another child, initially engaging in innocent conversations but gradually escalating to sexual topics.

5. The predator was able to use Roblox to transition their interactions to Gacha Life. Gacha Life allows users to create and customize anime-style characters and interact with other users in a virtual world with essentially no limitations.[4] Once Plaintiff switched to Gacha Life, the predator escalated his exploitation of Plaintiff to a disturbing level, coercing her to engage in graphic bondage, domination, sadism, and masochism ("BDSM") sexual role play. The predator capitalized on Plaintiff's young age and longing for companionship by demanding she participate in these interactions in order for them to continue playing online together.

6. Plaintiff has been permanently harmed by these experiences. At just 9 years old, Plaintiff developed a hyper fixation on sex and BDSM. This fixation manifested in her writing graphic erotica centered on dominant-submissive sexual relationships that involved the use of whips and chains.

7. Plaintiff suffered sexual exploitation as a result of Defendants' conduct. For years, Defendants have misrepresented and deliberately concealed information about the pervasive predatory conduct that their apps enable and facilitate. Had Defendants disclosed the truth of what was really occurring on their apps, Plaintiff's parents would never have permitted her to use these apps. Had Defendants taken any steps to screen users before allowing them on the apps, Plaintiff would not have been exposed to the large number of predators trolling the platforms. Had

[3] AppBrain, *Lunime*, https://www.appbrain.com/dev/Lunime (last visited April 30, 2026).
[4] John Elmore, *The Dark Side of Gacha Life: Are These Videos Appropriate for Kids?* (June 13, 2025), https://thetechylife.com/are-gacha-life-videos-appropriate/



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

Defendants implemented even the most basic systems of age and identity verification, as well as other commonsense safety measures, Plaintiff would have never interacted with this predator and never suffered the harm she did.

8. Plaintiff's innocence was stolen forever. Tragically, what happened to her is far from an isolated event. Indeed, Plaintiff is just one of countless children whose lives have been devastated as a result of Defendants' gross negligence and defectively designed apps. This action is a stand against Defendants' systemic failures to protect society's most vulnerable from unthinkable harm in pursuit of financial gain over child safety.

## II. PARTIES

9. Plaintiff A.Z.R. is a minor citizen and resident of the State of Alabama, with a principal place of residence in Madison County.

10. Plaintiff's Guardian Ad Litem, her father Scott R., is also a citizen and resident of the State of Alabama with a principal place of residence in Madison County.

11. Defendant Roblox Corporation is a Delaware corporation with its principal place of business in San Mateo, California. Roblox owns, operates, controls, produces, designs, maintains, manages, develops, tests, labels, markets, advertises, promotes, supplies, and distributes the Roblox app. Roblox is widely available to consumers throughout the United States.

12. The true names or capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiff who is therefore ignorant of true names and sues said Defendants by such fictitious names. Plaintiff believes and alleges that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiff as alleged herein.

## III. JURISDICTION AND VENUE

13. This Court has personal jurisdiction over Defendants because their principal places of business are in California, and because they have contacts with California that are so continuous and systematic that they are essentially at home in this State.

14. Venue is proper in this Court because Roblox conducts extensive and systematic

business activities within Los Angeles County, including marketing, advertising, user acquisition, data collection, and revenue-generating operations directed toward Los Angeles residents. Defendant purposefully avails itself of the Los Angeles market and derives substantial economic benefit therefrom. Accordingly, venue is proper in Los Angeles County pursuant to California Code of Civil Procedure section 395.5.

## IV. GENERAL ALLEGATIONS

### A. Roblox Was Created and is Advertised as a Children's Game.

15. Launched in 2006, Roblox is an online gaming app that allows users to play and develop immersive games, which the company labels as "experiences." There are currently more than 40 million experiences within the Roblox ecosystem.[5] Roblox's growth is dependent on its level of interactivity, which is why Roblox allows and encourages users to communicate with each other through features such as gameplay interactions, user hubs, direct messaging and voice chat.[6]

16. Roblox is easily accessible, including to children. It is free to download and play, and is available on gaming consoles, computers, tablets, and cellular devices.

17. Roblox is explicitly designed and marketed for children. Roblox publicly identified itself as the "#1 gaming site for kids and teens,"[7] as well as a safe, educational environment. Roblox claims that it provides "new gateways into learning . . . from chemistry to physics to robotics and more" by "bring[ing] concepts to life in ways that immerse learners and motivate exploration, play, and deep thinking."[8] Roblox further advertises that its "immersive educational

---

[5] David Curry, *Roblox Revenue and Usage Statistics (2026),* Business of Apps (January 7, 2026), https://www.businessofapps.com/data/rablox-statistics.

[6] "Our platform relies on our developers and researchers to create experiences . . . and we believe the interactions between and within the developer, creator, and user communities on our Platform . . . drives our growth." Roblox Corp., SEC 2023 Annual Report, 33 (February 21, 2024), https://www.bamsec.com/filing/131509824000026/1?cik=1315098&hl=29150:29175&hl_id=4ktab8yh1e

[7] Roblox, *What Is Roblox*, https://web.archive.org/web/20170227121323/https://www.roblox.com/ (archived Feb. 27, 2017).

[8] Roblox, *A New Era of Engaged Learning*, https://about.roblox.com/education (last visited May 3, 2026).



PANISH | SHEA | RAVIPUDI LLP

experiences" are "designed by curriculum experts."[9]




*Roblox webpage – "A New Era of Engaged Learning"*

18. Roblox's user base is overwhelmingly young. The app's popularity among children exploded during the pandemic, when they were confined to their homes and reliant on devices for social interaction. The app became the world's largest virtual recreational zone for children. According to Roblox's 2023 annual report to the United States Securities and Exchange Commission, 42% of the app's 68.4 million daily active users were under the age of 13.[10]




*Roblox 2023 SEC Annual Report*

19. Today, Roblox is the most downloaded online game. Globally, children are spending an average of 139 minutes a day on Roblox.[11] American children have surpassed the

[9] *Id.*
[10] SEC 2023 Annual Report, *supra* note 5, at 9.
[11] Qustodio, *Research by App Category – Gaming*, https://www.qustodio.com/en/the-digital-dilemma/gaming (last visited May 3, 2026).



PANISH | SHEA | RAVIPUDI LLP

global average, spending approximately 2.5 hours a day on the app.[12]

20. Individuals who wish to play Roblox must create an account, but the process requires only a birthdate, username, and password. Roblox imposes no minimum or maximum age and fails to verify the stated ages of users, allowing users of any age to play alongside millions of children. Although Roblox claims to require parental permission for account creation for minor users, this amounts to a sentence in its sign-up form which equates account creation with parental consent. Nothing prevents a child of any age from creating an account without parental approval.




*Roblox Sign-up Page*

21. Originally, Roblox configured its app to default to settings that allowed adults to easily communicate with children. Adult strangers could "friend" and chat with a child of any age via direct message. Even without being "friends," adults could send a direct message to a child of any age if they were present in the same Roblox experience. Only in January of 2026, did Roblox implement age requirements and verification systems for the platform's chat function.[13] Now, under Roblox default settings, the chat function is only activated for users age 13 and above.[14] However, the age-verification system amounts to uploading photo identification, which children can easily obtain from their parents and/or other adults around them in order to circumvent the chat function restriction. Further, children are still vulnerable to receiving friend requests which would allow predators to circumvent the chat function restriction through their own actions.

22. After creating an account, all users are assigned a default avatar – a cartoonish character that represents the individual user within the app. Through the avatars, users can play in any one of the millions of experiences on the app. The experiences are sorted into different genres/categories such as Sports, Role-Playing, Fighting, First Person Shooters, Fashion, Horror,

---

[12] *Id.*
[13] Roblox Corporation, SEC 2025 Annual Report, 12 (February 11, 2026).
[14] Roblox, *Safer Settings for All Ages*, /https://about.roblox.com/safety-by-age, (last visited May 3, 2026).

PANISH | SHEA | RAVIPUDI LLP

Comedy, Military, etc. The games recommended to each user vary based on the age the user entered when creating their account.

23. Roblox generates revenue primarily by selling in-platform digital currency ("Robux") which can be used to purchase avatar items and game content. Roblox users can also purchase Robux gift cards which can be sent to other users. Children frequently become obsessed with obtaining Robux, creating a powerful incentive that predators exploit to coerce or extort explicit images or interactions from children.[15]

**B. <u>Roblox Persistently Misrepresents the Safety of its Platform to Parents.</u>**

24. Roblox's success and continued growth has depended on persistent, false assurances to parents that the app is safe for children. These misrepresentations span more than fifteen years and appear across Roblox's website, executive statements, interviews, podcasts, and marketing materials.

25. As early as 2007, Roblox assured parents its platform was "an online virtual playground . . . where kids of all ages can safely interact, create, have fun, and learn."[16] From 2008 to 2016, Roblox's website promised that it "take[s] every precaution possible to make sure kids are protected from inappropriate and offensive individuals . . . and distasteful content."[17] The website further promised that Roblox moderators were "constantly reviewing chat logs and . . . uploaded content files" to ensure compliance with their "zero-tolerance policy in regard to . . . content of a sexual or violent nature, and any sort of aggressive or threatening communication."[18] Roblox claimed that any user found in violation of this policy would be "immediately suspended

---

[15] "In one case, Clinton McElroy, a 48-year-old registered sex offender in Ellis, Kansas, met an 8-year-old girl on Roblox in 2020 [and] traded thousands of Robux for more than 20 explicit images and videos she'd shot of herself using her iPad. In one exchange, he wrote, 'I can tell you['re] not really into this.' She responded, '**Anything for Robux**.'" Olivia Carville & Cecilia D'Anastosio, *Roblox's Pedophile Problem,* Bloomberg Businessweek (July 23, 2024), https://www.bloomberg.com/features/2024-roblox-pedophile-problem/ (emphasis added).

[16] Roblox, *Frequently Asked Questions (FAQs)*, https://web.archive.org/web/20071105104643/https://www.roblox.com/Parents/FAQs.aspx (archived Nov. 5, 2007).

[17] Roblox, *Keeping Kids Safe*, https://web.archive.org/web/20080501101437/http://www.roblox.com/Parents/KeepingKidsSafe.aspx (archived May 1, 2008)

[18] *Id.*



PANISH | SHEA | RAVIPUDI LLP

or permanently expelled."[19] These representations continue unabated.

26. Currently, Roblox's website claims that "[s]afety is core to everything [it] do[es]" and that it specifically prohibits "predatory behavior . . . attempting to connect with a minor in order to manipulate and exploit them . . . sexualizing minors . . . and sexually explicit content or behavior, including nudity or partial nudity."[20] Roblox boasts a robust, "expertly trained team with thousands of members dedicated to protecting . . . users and monitoring 24/7 for inappropriate content," as well as "safety review[s] of every uploaded image, audio, and video file . . . before [they] become available on [the] platform."[21]

27. Roblox's senior executives reinforce these false promises at every turn. In a 2013 *Wired* interview, when asked whether parents should be concerned about in-game chatting, CEO David Baszucki ("Baszucki") repeated the false assurance that Roblox "take[s] every precaution possible" to protect children.[22] Vice President of Civility Tami Bhaumik ("Bhaumik") has made similar promises in parenting magazines, news outlets, and podcasts, going as far as to claim that Roblox can create an environment that is "safer and more civil than the real world."[23] Chief Safety Officer Matt Kaufman ("Kaufman") asserted that "[s]afety and civility have been foundational to Roblox since its inception and that it "has always been designed to protect [its] youngest users."[24] Additionally, across numerous documents, statements, and interviews, Roblox officials boast that their moderation team reviews "every single image, audio file, and video before the content is uploaded."[25]

28. Roblox's public statements and promises are carefully crafted to paint a picture of security that distorts reality. These statements and promises have been proven false by Roblox's

---

[19] *Id.*
[20] Roblox, Safety - *Community Standards,* https://about.roblox.com/community-standards, (last visited May 4, 2026).
[21] Roblox, *Support – Safety & Civility at Roblox*, https://en.help.roblox.com/hc/en-us/articles/4407444339348-Safety-Civility-at-Roblox, (last visited May 4, 2026).
[22] Tony Sims, *Interview with David Baszucki, Founder & CEO of Roblox,* Wired (Feb. 7, 2013), https://www.wired.com/2013/02/roblox/.
[23] Larry Magid, *Podcast: Inside Roblox's Mission to Make Gaming Safer*, ConnectSafely (Jan. 15, 2025) https://connectsafely.org/podcast-inside-robloxs-mission-to-make-gaming-safer/.
[24] Matt Kaufman, *Scaling Safety and Civility on Roblox*, Roblox (April 4, 2024), https://about.roblox.com/newsroom/2024/04/scaling-safety-civility-roblox.
[25] Joseph Cox & Emanuel Maiberg, *Leaked Documents Reveal How Roblox Handles Grooming and Mass Shooting Simulators*, Vice (August 1, 2022), https://www.vice.com/en/article/leaked-documents-how-roblox-moderates-content-mass-shootings-grooming/; *see also* SEC 2025 Annual Report, *supra* note 12 at 12.



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

own admissions and omissions. Bhaumik has publicly conceded that "digital civility did not exist at Roblox" prior to 2018.[26] Kaufman's statements on prioritizing the safety of young users came before any age-check systems were implemented. Roblox's annual SEC reports admit that "users may still be exposed to content that may not be age-appropriate,"[27] and that users' ability to evade certain policies "have led to and may continue to lead to users being exposed to inappropriate content or behavior."[28] The calculated contradiction between public messaging and reality exposes Roblox's strategy of prioritizing profit over protection. This prioritization is reinforced by Baszucki's recent shift in messaging in response to parents' concerns over their children's safety: "if you're not comfortable, don't let your kids be on Roblox."[29]

**C. <u>The Reality of Roblox: A Predator's Dream and a Parent's Nightmare.</u>**

29. Roblox designed, built, and continues to maintain a toxic environment that enables obscene material to flourish and allows predatory pedophiles to target, groom, and sexually exploit children for the sake of attracting more daily users. Despite claims of 24/7 moderation and strict prohibition of inappropriate content, Roblox hosts and promotes graphic, sexually explicit content throughout its platform. Roblox experiences are created through developer tools such as scripting capabilities, 3D modeling systems, and other software. These tools are designed, controlled, and made freely available by Roblox to users in order to "make it as easy as possible for creators to build."[30] Instead of limiting developer tools, Roblox gave users and third parties unfettered access to use the tools without any meaningful safeguards which allowed experiences simulating sexual activity to pervade the app.[31]

30. Roblox hosts a staggering number of experiences centered on simulated sexual activity. Prior to the recent implementation of age restrictions, children as young as nine years old

---

[26] YouTube, Digital Civility Panel (Oct. 23, 2019), https://www.youtube.com/watch?v=XoUs1Js7WG0&list=PLcKphP00N1_kCLjvcOWdwbegJkNS
[27] SEC 2023 Annual Report, *supra* note 5 at 31.
[28] SEC 2025 Annual Report, *supra* note 12 at 30.
[29] Zoe Kleinman, *Gaming Empire: The Roblox Story*, BBC News (March 18, 2025), https://www.youtube.com/watch?v=LQztK0MCUAc.
[30] SEC 2025 Annual Report, *supra* note 12 at 8.
[31] *See, e.g.*, YouTube, *How to Do Roblox Sex Glitch*, https://www.youtube.com/watch?v=Zz97Q1SQE_k; *see also* YouTube, *Roblox Movie: The Lesbians Part 1 ||BrookHaven RP||*, *https://www.youtube.com/watch?v=RHhL_54TrNg.*

could play in "condo games," which are predatory digital environments where users can remove their avatars' virtual clothing, revealing nudity, and engage in disturbing simulated sexual activities with Roblox users.[32] Some of these "condo games" were found to be hosting "Nazi sex parties, featuring bondage acts and digital strippers."[33] Even with the implementation of age restrictions, condo games providing inappropriate content, like MeepCity, are still accessible to children 13 and older.




*Virtual strip club within Roblox's MeepCity which and allows users to pole dance and simulate sexual activity*

31. A 2024 investigative report by Hindenburg Research ("Hindenburg Report") found that Roblox hosted over 600 games which trivialized and gamified serious criminal conduct including rape and sex trafficking.[34] These games centered on the lives and conduct of convicted sex trafficker Jeffrey Epstein ("Epstein") and music mogul Sean "Diddy" Combs, who was indicted for sexual assault and sex trafficking of minors as young as 10 years old. Games titled "Survive Diddy" and "Escape to Epstein Island," referring to one of the locations Epstein trafficked minors in order to sexually and physically abuse them, were accessible to users as young as nine years old. The Hindenburg Report also exposed that Roblox permitted more than

---

[32] EJ Dickson, *Inside the Underground Strip-Club Scene on Kid-Friendly Gaming Site Roblox*, Rolling Stone (Sep. 12, 2021), https://www.rollingstone.com/culture/culture-features/roblox-virtual-strip-clubs-condo-games-sex-1197237/.

[33] Tom Knowles, *Nazi sex parties hosted on children's game Roblox,* The Times (February 16, 2022), https://www.thetimes.com/life-style/sex-relationships/article/nazi-sex-parties-hosted-on-childrens-game-roblox-s9vktzxx0.

[34] Hindenburg, *supra*, n.1.



PANISH | SHEA | RAVIPUDI LLP

900 accounts displaying variations of Jeffrey Epstein's name.







*Examples of Roblox games modeled after sex traffickers*[35]

32. There have also been numerous reports of children's avatars being raped by other users' avatars. For example, in 2018, a seven-year-old girl's avatar was violently raped by two male avatars *on a playground* in a Roblox experience, which was witnessed by the girl's mother.[36] In describing the aftermath of this traumatic experience, the girl's mother exclaimed, "I never in my wildest dreams would've ever imagined that I would have to talk with my seven-year-old about rape.[37]

33. Roblox played a direct role in enabling these rampant, sexually exploitative experiences and interactions. Roblox was fully aware that these experiences pervade its app, and allowed them to continue to exist unchecked, despite the ability to control or eliminate them. Leaked internal Roblox documents confirm that, instead of removing or preventing inappropriate conduct, the company made deliberate editorial decisions, such as what level of avatar nudity and sexual imagery was "acceptable."[38] Additionally, Roblox failed to remove the specific experiences related to Epstein and Diddy until legal action was brought against the company.

---

[35] *Id.*

[36] Savannah Levins, *North Carolina Mom Outraged After Roblox Game Depicts Violent Acts, Including Rape*, WFMYNews 2 (June 30, 2018), https://www.wfmynews2.com/article/news/local/2-wants-to-know/north-carolina-mom-outraged-after-roblox-game-depicts-violent-acts-including-rape/83-569498171.

[37] *Id.*

[38] Roblox moderators discussed how big of a genital "bulge" is problematic and how to handle the increase in sexually suggestive games and experiences. Vice, *supra* note 24.

PANISH | SHEA | RAVIPUDI LLP

34. Some of the leaked documents showed Roblox's internal rating system for the severity level of certain words or phrases that could be deemed inappropriate. While Roblox can claim to monitor all chats on the platform, it is clear that any content moderation that is happening is blatantly insufficient. As can be seen below "underage boy/girl" and "wish you were younger" both received a severity rating of **two**.

| | | |
|---|---|---|
| underage boy | ragazzo minorenne | 2 |
| underage girl | ragazza minorenne | 2 |
| wish you were younger | vorrei che tu fossi più giovane | 2 |
| without {{family_member}} knowing | senza che {{family_member}} lo sappia | 2 |
| {{minor_months}} old | {{minor_months}} di età | 2 |
| {{minor_months}} old content | contenuti per {{minor_months}} | 2 |
| {{minor_years}} years old | {{minor_years}} di età | 2 |
| grooming {{child}} | ingannando {{child}} | 3 |
| he likes {{minor_months}} old | gli piacciono {{minor_months}} di età | 3 |
| he likes {{minor_months}} olds | gli piacciono {{minor_months}} di età | 3 |
| he likes {{minor_years}} years old | gli piacciono {{minor_years}} di età | 3 |
| is your {{family}} home | la tua {{family} è a casa | 3 |

*Screenshot from Roblox content moderation documents*[39]

35. The effects of these games on children can be devastating. Playing video games with explicit sexual content normalizes exploitative and predatory behavior, blurring the lines of what is acceptable in real life. This is particularly harmful for children, who are still developing their understanding of social norms and morality. When such behavior is depicted as humorous, exciting, or rewarded within a game, young players can internalize the idea that harassment or sexual exploitation is harmless and acceptable.

36. Studies support this connection. One study found that playing games with sexualized content was linked to increased rates of sexual harassment towards female targets, suggesting that such exposure desensitizes players to the real-world consequences of these actions.[40] Another study showed that playing mature-rated games was associated with higher rates of risky sexual behavior years later, highlighting the long-term impact of exposure to sexualized or exploitative content.[41] The interactive nature of Roblox games amplifies this effect and pushes children to actively participate in behaviors simulating harassment or exploitation, reinforcing the

---

[39] *Id.*

[40] Jonathan Burnay, Brad J. Bushman & Frank Larøi, *Effects of Sexualized Video Games on Online Sexual Harassment*, 45 Aggressive Behavior 2, 214 (March/April 2019).

[41] Jay G. Hull et al., *A Longitudinal Study of Risk-Glorifying Video Games and Behavior Deviance*, J. Pers. Soc. Psychol. 2014 August; 107(2): 300-325.

PANISH | SHEA | RAVIPUDI LLP

perception that such actions are normal or desirable. This environment not only desensitizes children, but also makes them more likely to replicate these actions in real-world interactions.

37. The dangerous content on Roblox is not limited to online games. The Hindenburg Report found that a basic search for "adult" in Roblox revealed a group with 3,334 members "openly trading child pornography and soliciting sexual acts from minors.[42] Tracking these members unearthed additional Roblox groups engaged in the same criminal conduct, including a massive group with 103,000 members.[43] Many individuals in these groups have blatantly offensive usernames that should immediately trigger any content moderation systems that exist. Names range from "@Igruum_minors," "@RavpeTinyK1dsJE," and "@EarlBrianBradley" – a reference to one of the most prolific pedophiles ever who raped and molested over one thousand toddlers.




*Public chat for a group named "Adult Studios," where users openly solicited child pornography.*[44]

38. Roblox has also enabled individuals to create an entire category of pornographic content. Using Roblox's tools and software, users can make virtual sex videos between avatars on Roblox. These videos are clearly marked with the .rbxl file extension –Roblox's proprietary file

[42] Hindenburg Research, *supra* note 1.
[43] *Id.*
[44] *Id.*

PANISH | SHEA | RAVIPUDI LLP

format – establishing that this content was created within the Roblox application.[45]




*This Roblox user advertised their Roblox account on porn website, XVideos, where they had uploaded videos of their avatar having sex with other Roblox users*[46]




*Over 250,000 results for "Roblox" on pornographic website XVideos*[47]

39. In sum, the online environment that Roblox hosts and enables starkly contradicts its representations of providing a safe product. The existence of such clearly graphic and explicit

[45] *Id.*
[46] *Id.*
[47] *Id.*

PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

content on its platform demonstrates Roblox's blatant disregard for the safety of its youngest users and reveals the company's prioritization of user engagement over its fundamental duty to protect young users.

40. Because of the environment and content allowed by Roblox, the app serves as the online platform of choice for predators seeking to find, groom, abuse, and exploit children. Predators are easily able to access tens of millions of children and freely move between inappropriate content and popular games to identify and target vulnerable young users. By providing such easy access to predators, and failing to address the issue, Roblox has demonstrated reckless indifference to its fundamental obligation not to create and foster an environment that places children at significant risk of sexual exploitation.

41. These systematic patterns of exploitation on Roblox follow a predictable and preventable sequence that the company has known about and facilitated for years: a predator misrepresents their age to other users on the app, cosplaying as a fellow child, methodically befriends the vulnerable young victim, and then strategically manipulates the child to move the conversation off Roblox to other popular apps, such as Discord or Gacha Life where there conversations and interactions can be even more explicit. Organizations and media have repeatedly highlighted Roblox as the point of contact between predator and their prey.[48] Due to their young age and undeveloped brains, the children are more trusting and naïve, often incapable of recognizing the danger of providing their usernames on other sites.

42. Predators are able to weaponize Roblox's virtual currency system in order to exploit children, offering Robux for explicit images or threatening to expose explicit imagery unless Robux are paid. Roblox collects transaction fees on each one of these exchanges meaning the platform is **directly profiting off sexual exploitation of children**. Roblox is fully aware of this illegal utilization of its platform and fails to take any meaningful step to prevent this from happening, showing the company prioritizes profit over protection.

43. Roblox enables another pattern of predatory grooming in which predators employ

[48] National Center on Sexual Exploitation, *The Dirty Dozen List '24: Roblox*, https://endsexualexploitation.org/roblox/ (last updated Dec. 4, 2024).

PANISH | SHEA | RAVIPUDI LLP

blackmail tactics. Predators will threaten violence against the children and/or their families if the child does not comply with the predator's demands. Through its deliberately insufficient monitoring systems, Roblox allows predators to threaten children and coerce them into complying with criminal demands.

**D. <u>The Real World Harm Caused by Roblox.</u>**

44. Regardless of how the initial grooming relationship begins, which is often as simple as someone asking the child to be their boyfriend or girlfriend, the predators also often attempt to make in-person contact with the child. The dangerous progression from Roblox's online app to real-world violence reveals the devastating consequences of the company's product. Roblox's app enables predators to escalate from virtual contact to orchestrating physical meetings, leading to harassment, kidnapping, trafficking, violence, and sexual assault of minors, all instances from which these children suffered as a direct result of Roblox's actions.

45. Roblox has long known of these systematic patterns of exploitation. Through hundreds of criminal cases, police reports, and widespread media coverage spanning from at least 2017 to present, Roblox knew its platform was being used by predators to groom, exploit, kidnap, traffic, rape, and sexually abuse children as young as eight. Documented examples include:

(a) A predator posing as a child coerced a nine-year-old girl into performing and filming sexually abusive acts on her four-year-old brother through violent threats, including death, against her family.[49]

(b) Twenty-four men in New Jersey were charged in a sting operation for soliciting sex from minors; the New Jersey State Police Lieutenant specifically called out Roblox as a platform predators use to gain children's trust.[50]

(c) A Florida predator was charged with 14 counts of child pornography possession and 12 counts of prohibited computer pornography after using Roblox to target children ages 10-12 and coercing them to send explicit images of themselves in exchange for Robux.[51]

(d) A Wales predator used Roblox to groom 150 children, 60 under the age of 13, to perform sexual acts on Roblox and over webcams, often bribing the children with

---

[49] Briana Barker, *Internet safety and your children: How kids are at risk,* Record-Courier (Mar. 27, 2018), https://www.record-courier.com/story/news/2018/03/27/internet-safety-your-children-how/12899346007/.

[50] *Cop, firefighter among 24 charged in child luring sting*, FOX 13 TAMPA BAY (Sept. 25, 2018), https://www.fox13news.com/news/cop-firefighter-among-24-charged-in-child-luring-sting.

[51] Max Chesnes, *Deputies say Vergo Beach man used popular video game platforms to target children,* TC Palm (Aug. 20, 2019), https://www.tcpalm.com/story/news/crime/indian-river-county/2019/08/20/detectives-advise-online-safety-after-vero-beach-man-used-video-game-platforms-target-minors/2059599001/.

PANISH | SHEA | RAVIPUDI LLP

Robux.[52]

(e) A 47-year-old predator groomed a 13-year-old on Roblox, migrated to Facebook, solicited explicit photos and videos, and ultimately trafficked her across state lines and raped her multiple times.[53] *See U.S. v. McGavitt,* 28 F.4th 571 (5th Cir. 2022).

(f) A registered sex offender in Kansas solicited an eight-year-old for sexually explicit videos in exchange for Robux.[54]

(g) A 33-year-old man groomed a 13 year-old girl on Roblox and transported her from her home in Kansas to his home in Georgia and raped her multiple times.[55]

(h) A prominent Roblox developer **with a known history of exploiting children via Roblox** trafficked a 15-year-old girl from Indiana to New Jersey and sexually abused her for 8 days before she was found by the FBI.[56]

(i) A California man groomed a 10-year-old girl and convinced her to send explicit photos and videos of herself, which he then used as blackmail to procure more images and force the child to disrobe and touch herself while on a chat program with him.[57]

(j) A 64-year-old man posed as a 13-year-old boy on Roblox and convinced a 12-year-old girl to send explicit photos of herself and her 5-year-old female relative.[58]

(k) A man in the UK, groomed a 10-year-old girl on Roblox , moved their interactions to Snapchat, and ultimately drove 100 miles from his home to rape her in the woods by her home.[59]

46. Of all the listed tragedies, Roblox responded only to one. The comment was a continuation of their misrepresentations and false assurances. The Roblox spokesperson stated:

*We work tirelessly to prevent grooming on our platform. We have*

[52] Liz Day, *Paedophile Groomed 150 Children to Engage in Sexual Activity Using Online Game Roblox*, Wales Online (May 10, 2019), https://www.walesonline.co.uk/news/wales-news/paedophile-groomed-150-children-engage-16258877.

[53] U.S. Attorney's Office – Southern District of Texas, *Magnolia man gets life for exploiting young female he met and communicated with via Roblox and Facebook* (Oct. 15, 2020), https://www.justice.gov/usao-sdtx/pr/magnolia-man-gets-life-exploiting-young-female-he-met-and-communicated-roblox-and.

[54] Carville & Anastosio, *supra*, note 14.

[55] FOX 5 Atlanta Digital Team, *Clayton County man charged with sex trafficking, rape of 13-year-old girl he met on gaming app Roblox*, FOX 5 Atlanta (March 3, 2022), https://www.fox5atlanta.com/news/clayton-county-man-charged-with-sex-trafficking-rape-of-kansas-girl.

[56] U.S. Attorney's Office – Southern District of Indiana, *New Jersey Man Sentenced to 15 Years in Federal Prison After Grooming Minor Online and Transporting Her Across State Lines via Uber for Sex* (Aug. 30, 2023), https://www.justice.gov/usao-sdin/pr/new-jersey-man-sentenced-15-years-federal-prison-after-grooming-minor-online-and

[57] Ashley Harting, *Online Predator Who Targeted 10-Year-Old on Roblox Pleads Guilty in Butte County,* KRCR (Sep. 25, 2024), https://krcrtv.com/news/local/online-predator-who-targeted-10-year-old-on-roblox-pleads-guilty-in-butte-county.

[58] Travis Schlepp, *Man, 64, admits to 'catfishing' girl on Roblox, convincing her to send explicit images*, KTLA (Jul. 26, 2024), https://ktla.com/news/california/man-64-admits-to-catfishing-girl-on-roblox-convincing-her-to-send-explicit-images/.

[59] Martin Robinson, *Roblox predator who raped 10-year-old girl is locked up: Paedophile who 'targeted child he met on gaming platform' is jailed for six years* (Jan. 17, 2025), https://www.dailymail.com/news/article-14278563/Roblox-predator-raped-10-year-old-girl.html.

> *stringent safety systems and a team of thousands of moderators who enforce a strict set of community standards on Roblox, including zero tolerance for sexual content of any kind.*[60]

47. Despite Roblox's claimed safety improvements in 2024 and 2025, predators continue to enjoy easy access to children on the app and continue to cause devastating harm. In April 2025, a California man was arrested for kidnapping and sexually abusing with a ten-year-old he met on Roblox.[61] The next month, a 17-year-old was arrested in Florida for communicating with and convincing hundreds of children, some as young as 8 years old to molest their siblings and produce and send explicit materials.[62]

48. Roblox's systematic endangerment of children has been publicly condemned by parents, law enforcement, and the National Center on Sexual Exploitation ("NCSE"). NCSE has named Roblox to its annual "Dirty Dozen" list of companies that facilitate, enable, or profit from sexual exploitation, stating that Roblox "treats child protection like a game" and that "[u]ntil basic child protection standards are met, Roblox remains too high risk for kids."[63] Even former Roblox moderators insist that they would not let children in their life play Roblox because of the danger it poses.[64]

49. The harm from this form of child abuse and exploitation extends beyond the initial victims. Through the design of its app and inadequate safeguards, Roblox has created an abusive ecosystem where former victims – children who were once exploited on Roblox – become teenage perpetrators who then prey upon younger users, making today's victims tomorrow's perpetrators. Researchers have repeatedly confirmed the abused-abuser pipeline: children who are exposed to and victimized by sexual content are more likely to become desensitized teenagers and adults who

---

[60] FOX 5 Atlanta, *supra* note 53.

[61] Richard Ramos & Nicole Comstock, *Elk Grove man accused of kidnapping Kern County girl he communicated with on Roblox*, CBS Sacramento (April 18, 2025), https://www.cbsnews.com/sacramento/news/elk-grove-man-accused-kidnapping-kern-county-girl-roblox/.

[62] Briana Trujillo, *Ocala 17-year-old convinced kids to send him sex abuse material on Roblox: Sheriff*, NBC Miami (May, 2025).

[63] National Center on Sexual Exploitation, *supra* note 46.

[64] Hindenburg, *supra* note 1.



PANISH | SHEA | RAVIPUDI LLP

then exploit younger users in the same way.[65] In effect, Roblox is contributing to this "raising of" predators who perpetuate the cycle of exploitation.

### E. Roblox Knowingly Facilitates Sexual Exploitation of Children.

#### 1. Roblox prioritizes growth over child safety.

50. The magnitude of the harm caused by Roblox is devastating. Yet rather than warn parents, schools and the public, Roblox continues to minimize these dangers through repeated misleading public statements. When asked about serious safety failures in an interview, Roblox's Chief Safety Officer Matt Kaufman, redirected the conversation, stating "I think we're losing sight of the tens of millions of people where Roblox is an incredibly enriching part of their life."[66] Although Kaufman and other Roblox executives often publicly claim that any incident or risk of harm to a child is one too many, investor documents admit that Roblox is "unable to prevent all such [inappropriate] interactions from taking place."[67] This calculated contradiction between public messaging and private admissions—telling parents that even one incident is unacceptable while simultaneously acknowledging to investors that abuse is inevitable—exposes Roblox's strategy of prioritizing public relations through hollow and misleading public statements over its fundamental duty to protect children.

51. Roblox designed and operates its platform to maximize user growth and revenue at the direct expense of child safety. Roblox has always positioned itself as a place where kids can learn and play games in a safe environment. However, after the company went public, Roblox pursued an explicit strategy of "aging up" its platform to attract more adult users, who "monetize better" than children.[68]

52. Despite the heavily documented dangers of adult presence on and access to the platform, Roblox remained steadfast in its goal of attracting older users. In 2023, at Roblox's

---

[65] James RP Ogloff, Margaret C. Cutajar, Emily Mann & Paul Mullen, *Child Sexual Abuse and Subsequent Offending and Victimisation: A 45 year follow-up study*, Trends & Issues in Crime and Criminal Justice No. 440 (Jun. 2012), https://www.aic.gov.au/sites/default/files/2020-05/tandi440.pdf; *see also* M. Glasser et al., *Cycle of Child Sexual Abuse: Links Between Being a Victim and[] Becoming a Perpetrator*, British J. Psychiatry vol. 179, issue 6 (2001).

[66] Scott Tong & James Perkins Mastromarino, *Roblox chief safety officer on new safety features, past cases of child abuse on the platform*, Here & Now Podcast (November 18, 2024), https://www.wbur.org/hereandnow/2024/11/18/roblox-safety-features.

[67] SEC 2025 Annual Report, *supra* note 12 at 30.

[68] Q2 2022 Earnings Call (Aug. 10, 2022), https://www.roic.ai/quote/RBLX:UN/transcripts/2022-year/2-quarter.



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

annual Developer Conference, CEO Baszucki, actively encouraged developers to create experiences for older audiences and introduced features--including voice calls, screen sharing, and relaxed chat moderation--designed for adults.[69] What is more concerning is that Baszucki shared that Roblox hopes to facilitate "real-life relationships" between users and announced plans to build a product to support that, while maintaining open access for children and implementing no meaningful restrictions on adult-child interactions.[70] Concerns were immediately raised about these features; one user emphasized, "This is a bad idea Roblox, and especially on your platform because this is where most predators are coming from, and it makes it way easier for predators to prey on children."[71]

53. In its most recent SEC Annual Report, Roblox reiterated that it still "see[s] a large opportunity to expand [its] footprint among older audiences" and plans to further "expand into new genres, use different gameplay mechanics," and offer "a different look and feel than classic Roblox games."[72] The risk Roblox poses to child safety is not inadvertence, it is a deliberate, and clearly stated, business strategy.[73]

54. Roblox's business model attracted significant venture capital funding which in turn causes intense pressure to grow and monetize its user base. To maximize user acquisition, Roblox made deliberate choices that placed children at risk: no age verification; no default restrictions on adult-child communications; no parental consent requirements; and content labeling so flawed it rated graphic sexual content as child-appropriate for almost 20 years. Roblox welcomed users of any age, while simultaneously enticing adults with mature content, without implementing meaningful barriers between the two starkly different user populations.

55. Roblox went public in 2021 at a $41 billion valuation. To satisfy investor demands, Roblox actively deprioritized safety expenditures. Roblox exerted pressure on employees to not

---

[69] Roblox Developers Conference 2023 Keynote (Sep. 8, 2023), https://www.youtube.com/watch?v=CwLThCghzA4.
[70] *Id.*
[71] Josh Taylor, *Roblox Under Fire After Adding Controversial Voice Call Feature*, Dexerto (Nov. 15, 2023), https://www.dexerto.com/roblox/roblox-under-fire-after-adding-controversial-voice-call-feature-2384564/.
[72] *Id.* at 18.
[73] "Measures intended to make our Platform more attractive to an older audience, including, but not limited to, chat without filters, Trusted Connections, and experiences with mature content could fail to gain sufficient market acceptance by their intended audience and have and may continue to create the perception that our Platform is not safe for younger users." *Id.* at 29

implement changes, such as safety features, that might cause users to leave the platform and rejected proposals for parental approval requirements.[74] One former employee explained that implementing safety features which limited user engagement was seen as a downside because any decrease in active users or time spent on the platform would hurt their overall metrics.[75]

56. Corporate documents confirm that the company views safety measures in only one light: profit or loss. When discussing safety features in its 2023 Annual SEC Report, Roblox stated that "[a]ny negative publicity could create the perception that we do not provide a safe online environment and may have an adverse effect on the size, engagement, and loyalty of our . . . community, which would adversely affect our business and financial results."[76] The report continues to highlight the potential need for "substantial investments" in safety but then highlights that "these investments may not be successful" because any decrease in engagement would harm revenue, bookings, and operating results.[77] By limiting safety measures, Roblox not only increases its user base, but also reduces expenditures. Chief Financial Officer Mike Guthrie exposed the company's prioritization of driving safety costs down when he boasted that Roblox's fixed cost related to infrastructure and safety was down about 25% year-over-year.[78]

2. **<u>Roblox consciously decided not to implement basic safety features.</u>**

57. Roblox has refused to implement simple measures that would have protected children using its app. For example, despite having the ability to require basic identity verification, Roblox instead chose to allow users to create accounts without providing their name or email address—a policy that enables predators to easily create multiple anonymous accounts. Roblox also could have required children to provide their names and email addresses and obtain parental approval—a fundamental protection against predators—but refused to do so. This decision allowed the company to bypass certain protections that are mandated by federal law and designed to protect children. The Children's Online Privacy Protection Act ("COPPA") prohibits companies

[74] Hindenburg, *supra* note 1.
[75] *Id.*
[76] SEC 2023 Annual Report, *supra* note 5 at 32.
[77] *Id.*
[78] Q2 2024 Earnings Call (Aug. 1, 2024), https://www.fool.com/earnings/call-transcripts/2024/08/01/roblox-rblx-q2-2024-earnings-call-transcript/.



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

like Roblox from collecting, using, or disclosing the personal information of children under 13 without verifiable parental consent. COPPA was enacted because Congress recognized the heightened vulnerability of children on the internet. As the Federal Trade Commission ("FTC") noted, children under 13 lack the capacity to "understand fully the potential serious safety and privacy implications" of sharing their personal information.[79] More recent international regulations are stricter. For example, the European Union's General Data Protection Regulation (GDPR) requires verifiable parental consent for children under 16, or lower if the member states so choose.[80]

58. The FTC has outlined clear and acceptable methods for obtaining verifiable parental consent. These include: (a) providing a form for parents to sign and return; (b) requiring the use of a credit card or online payment that notifies parents of each transaction; (c) connecting parents to trained personnel via video conference; (d) offering a staffed toll-free number for parental verification; (e) asking knowledge-based questions to confirm identity; or (f) verifying a parent's photo-ID by comparing it to a second photo using facial recognition technology.[81]

59. Yet instead of implementing safeguards to comply with COPPA, Roblox chose to bypass these protections altogether. Consequently, creating a Roblox account is alarmingly easy, requiring less than sixty seconds and no meaningful oversight—a choice that prioritizes growth over the safety of its youngest users.[82]

60. Roblox also chose not to require adult users to verify phone numbers—which would create significant barriers to predators creating multiple accounts—despite knowing that this enables bad actors to easily create numerous anonymous accounts to target children.

61. Roblox also opted not to require users to verify their age by uploading a picture of either their or their parents' ID, a practice that many other applications employ. Doing so would

[79] Federal Trade Commission, *Privacy Online: A Report to Congress,* 6 (1998), https://www.ftc.gov/sites/default/files/documents/reports/privacy-online-report-congress/priv-23a.pdf.
[80] Art. 8 GDPR; *see also* Consent to Use Data on Children, EU Agency for Fundamental Rights (https://fra.europa.eu/en/publication/2017/mapping-minimum-age-requirements-concerningrights-child-eu/consent-use-data-children).
[81] Federal Trade Commission, *Complying with COPPA: Frequently Asked Questions*, (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions.
[82] Tong & Perkins Mastromarino, *supra* note 64.

have restricted the content available to young users and prevented predators from easily mispresenting their age, which is often their approach in targeting and grooming children. As one father told the press after seeing other users solicit his avatar for sex, "There is nothing to stop adults going on there and pretending they're kids."[83]

62. Roblox could easily have restricted communications between adult accounts and children's accounts, something that many other platforms have done. It could also have restricted adult accounts from sending Robux to children's accounts, a feature that sexual predators frequently use to lure children.

63. Roblox likewise could have created a separate, gated platform for younger children that excludes adults. If supported by age verification using facial recognition (a service that is widely commercially available), the company could create a space for young children to enjoy Roblox games with very few, if any, adults present. Many digital service companies have adopted separate platforms for children of young ages, including, for example, Amazon and Netflix.

64. Roblox could have placed a higher age rating on its application in the iOS App Store and other app stores, to signal to parents that the app presented risks for children. Roblox also could have provided clear warnings to parents about the presence of sexual predators on the platform, so that parents could make an informed decision about allowing their child on the platform and/or educate their child on how to stay safe on the platform. Roblox could also have provided clear warnings to children about the presence of sexual predators on the platform, and instructed children on how to stay safe on the platform.

65. Despite these glaring failures, Roblox persistently boasts about its AI content moderation systems. Yet this technology has proven grossly inadequate and insufficient to protect children. For example, Roblox's filters have inexplicable omissions. While Roblox prevents users from sharing phone numbers in numerical format, it does nothing to stop users from spelling out the numbers.[84] Similarly, while Roblox attempts to block the word "condo"—a term that, until

[83] *Horrified Dad Found Sick Messages from Paedo Predator in His Eight-Year Old Son's Roblox iPad Game*, The Sun (Feb. 15, 2017), https://www.thesun.co.uk/news/2872376/horrified-dad-found-sick-messages-from-paedopredator-in-his-eight-year-old-sons-roblox-ipad-game/.
[84] *Id.*



PANISH | SHEA | RAVIPUDI LLP

recently, was widely used to identify sexualized experiences—countless external groups on platforms like Reddit and Discord are dedicated to helping users locate new explicit content on Roblox. As soon as Roblox removes one game, its ineffective safeguards allow the same game to be reuploaded almost immediately from a new account, perpetuating the cycle of explicit and harmful content. External groups have capitalized on Roblox's weak moderation by guiding predators to these reuploaded games, with Fast Company easily identifying 150 Discord groups dedicated to exploiting Roblox's lack of robust enforcement.[85]

66. Beyond Roblox's ineffective technology, the company also employs a woefully inadequate number of human moderators to analyze and manage content on its platform. With only about 3,000 moderators, Roblox pales in comparison to platforms like TikTok, which, despite having only three times the number of users, employs more than ten times the number of moderators at 40,000.[86] Roblox attempts to justify this disparity by claiming "[y]ou really can't judge the quality of these moderation systems by the number of people."[87] But the reality tells a different story. Roblox's moderators, many of them overseas contractors, report being overwhelmed by an unmanageable volume of child safety reports, making it impossible to address all concerns effectively and leaving countless safety issues unresolved.[88]

67. Even the safety data that Roblox touts is flawed and only underscores the growing dangers created by the company's app. For example, Roblox proudly points to its low percentage of reports to the National Center for Missing and Exploited Children ("NCMEC")—the leading U.S. nonprofit organization tasked with preventing child exploitation and assisting in the recovery of missing children. Roblox claims that it accounts for less than .04% of reports made to NCMEC.[89] But this data is entirely self-reported and therefore depends on Roblox's ineffective content moderation and safety team. This self-reported data to NCMEC—flawed and limited as it

[85] Burt Helm, Sex, Lies and Video Games: *Inside Roblox's War on Porn*, Fast Company (Aug. 19, 2020), https://www.fastcompany.com/90539906/sex-lies-and-video-games-inside-roblox-waron-porn.
[86] Carville & D'Anastosio, *supra* note 14.
[87] Tong & Perkins Mastromarino, *supra* note 64.
[88] Carville & D'Anastosio, *supra* note 14.
[89] Scott Tong & James Perkins Mastromarino, *Roblox Attempts to Bar Child Predators as Short Sellers Target the Popular Game Platform,* Here & Now Podcast (October 21, 2024), https://www.wbur.org/hereandnow/2024/10/21/roblox-child-predators-safety.



PANISH | SHEA | RAVIPUDI LLP

is—also reveals a disturbing trend: Roblox's reports about suspected child sexual exploitation have surged over the years, from 675 reports in 2019 to 13,316 reports in 2023.[90]

68. Roblox also boasts that just "0.0063% of [its] total content was flagged for violating" policies. But Roblox itself controls the systems responsible for identifying and flagging violative content.[91] These lower percentages are thus a reflection not of safety but of Roblox's ability to minimize the appearance of problems through its own inadequate reporting and enforcement mechanisms. By hiding behind self-serving metrics and refusing to take meaningful action, Roblox has fostered an environment where children are subjected to irreparable harm while the company continues to reap financial rewards.

69. The very existence of Roblox's trust and safety "data" on inappropriate communications to train its AI systems contradicts its claim that "one is too many" when it comes to the sexual exploitation of children. This data exists only because countless instances of abuse, exploitation, and predatory interactions have already occurred. Roblox's reliance on this data to train its AI systems exposes the reality that its so-called safety measures are not designed to prevent these atrocities but to react to them after the damage has been done. Instead of creating a secure environment where such harm never occurs and ensuring that such interactions never happen in the first place, Roblox uses the suffering and trauma of children as the foundation for its trust and safety systems. This cycle underscores the company's prioritization of optics over genuine protection, leaving its youngest users at the mercy of its neglect.

70. Roblox's own developers even admit that Roblox is unsafe for children.[92] Online forum discussion posts are replete with developers writing that they would not allow their own children to use the platform, citing pervasive issues with Roblox's child safety policies. Many of these posts highlight the platform's systemic failures and suggest straightforward changes Roblox

---

[90] National Center for Missing & Exploited Children, *2019 CyberTipline Reports by Electronic Services Providers (ESP)*, https://www.missingkids.org/content/dam/missingkids/pdfs/2019-reports-by-esp.pdf; *see also* National Center for Missing & Exploited Children, 2023 CyberTipline Reports by Electronic Services Providers (ESP), https://www.missingkids.org/content/dam/missingkids/pdfs/2023-reports-by-esp.pdf.

[91] Vikki Blake, *Roblox Reported Over 13,000 Incidents to the National Center for Missing and Exploited Children in 2023*, GamesIndustry.biz (Jul. 23, 2024), https://www.gamesindustry.biz/roblox-reported-over-13000-incidents-to-the-national-center-formissing-and-exploited-children-in-2023.

[92] Dorsey, *supra* note 88.



PANISH | SHEA | RAVIPUDI LLP

could implement to create a safer environment but has consistently ignored—for example:

(a) "Unfortunately, it is worse now due to Roblox's moderation being so abysmal and Roblox being a far more widespread platform. Creeps flock aplenty when before the creep: kid ratio was much much lower . . . . Roblox has no interest in actually fixing the issues so long as the bad press doesn't end up viral."[93]

(b) "No. Roblox is not safe for children. The amount of NSFW [Not Safe for Work] I see on this platform on a daily basis is unbelievable. I'm surprised COPPA hasn't taken any action."[94]

(c) "I believe they need to automatically rate these games for older audiences, if not, you know, removing them entirely. I could keep going on about this issue, but it's just beating a dead horse at this point."[95]

(d) "Roblox got banned for bad moderation; Turkey banned it to 'protect children,' and they are not wrong. The amount of visits from 10 of these games is, in summary, 100 million+. I don't want to know how many of these children have seen nudity or even developed a p*rn addiction. But that is a big problem with Roblox doing almost nothing to prevent it."[96]

71. These statements, coming from individuals familiar with Roblox's operations, paint a picture of an environment rife with neglect, where harmful content flourishes, predators thrive, and Roblox repeatedly fails to act—even in the face of widespread and urgent warnings. In short, Roblox has consistently and deliberately sacrificed child protection in pursuit of growth and profit. This systematic subordination of child safety to business objectives reflects Roblox's continued choice to maximize profits at the expense of exposing children to preventable dangers on its app. Had Roblox acted differently, the harm suffered by countless children would not have occurred.

**3. Roblox's recent safety changes are woefully inadequate.**

72. It took years of mounting pressure for Roblox to finally announce changes to its

[93] *Id.*
[94] *Id.*
[95] *Id.*
[96] *Id.*

PANISH | SHEA | RAVIPUDI LLP

child safety features. These changes were prompted not by the years of police reports and widespread media coverage, but by a scathing report published by a Hindenburg Research platform of being a "pedophile hellscape for kids."[97] The revelations in the report sparked public outrage.

73. A little more than a month later, Roblox announced a series of changes, including permanently removing the ability to message others outside of games on its app for under 13-yearold users; giving parents a separate dashboard where they can monitor a child's Roblox account, view the child's friend list, set spending control, and manage screen time; preventing games from using chalkboard writings where people could get around the censoring of communications; and implementing restrictions to stop under 13-year-old users from accessing new Roblox games that are awaiting maturity ratings.

74. These changes could all have been implemented years ago. None of them involve any new or groundbreaking technology. Roblox only moved forward when its stock was threatened. These changes are little more than window dressing—too little, too late, and woefully inadequate. Most fundamentally, Roblox *still allows* adults to contact and message children. Roblox only banned user-to-user messaging for users under the age of 13 *outside of games*. Predators can still message children on public chats while playing games; indeed, Roblox has left child predators' blueprint for finding children on the application intact since predators have always found children by playing games they know that children will frequent.

75. Roblox also failed to address core issues like the app's refusal to require parental consent to make an account. The restrictions described above work only if children correctly state their age during sign-up. Any child can easily bypass them—including parental controls and limits on messaging—by lying about their birthday. Roblox likewise did not commit to hiring more moderators or increasing its trust and safety budget, nor did it implement any sort of identity check to prevent registered sex offenders from making accounts.

76. In fact, recently, in April 2025, a research firm in the U.K. demonstrated just how

[97] Hindenburg, *supra* note 1.



PANISH | SHEA | RAVIPUDI LLP

easy it still is for predators to find children and move the conversation to another application, such as Snapchat or Discord, despite Roblox's ban on direct messaging with users under the age of 13.[98] Because Roblox still allows adult users to message children *in games*, predators can use the public chat functions in games to groom child users and ask for their usernames on other platforms. The key findings from this report included that "[a]dults and children can chat with no obvious supervision" and that "[t]he safety controls that exist are limited in their effectiveness and there are still significant risks for children on the platform."[99]

77. Just as Roblox rolled out these changes, it simultaneously introduced a new "Parties" feature in an attempt to counteract any potential loss in user engagement.[100] Because Roblox knew that users often turned to other apps like Discord to communicate while playing video games and because Roblox knew that its safety changes would reduce key user engagement metrics, it sought to capture that traffic (and revenue) and replace any loss of engagement with the Parties feature. While the Parties feature is currently available only for users aged 13 and older, such limitations are hollow without robust age verification. And the fact that Roblox has stated that it is exploring making such a feature available to younger users demonstrates that, far from prioritizing safety, Roblox's real focus is protecting its bottom-line.[101]

78. Roblox has also engaged in a deceptive public relations campaign using ostensibly independent online safety organizations to influence the narrative around these changes. For instance, Roblox has leveraged its ties to groups like the Family Online Safety Institute ("FOSI"). An online parenting magazine favorably quoted Stephen Balkam, FOSI's CEO, as endorsing Roblox's new features as a win for child safety.[102] What the article omitted, however, is that Roblox's own Vice President of Civility and Partnerships, Tami Bhaumik, serves as FOSI's board

[98] Revealing Reality, *A Digital Playground: The Real Guide to Roblox* (Apr. 13, 2025), https://think.revealingreality.co.uk/roblox-real-guide.
[99] *Id.*
[100] Rebecca Ruiz, *Roblox's New Party Feature Makes Discord Obsolete*, Mashable (Dec. 2, 2024), https://mashable.com/article/roblox-party-discord.
[101] *Id.*
[102] Anna Halkidis, *What Roblox's Latest Changes Mean for Your Kids' Online Safety*, Parents (Nov. 18, 2024), https://www.parents.com/roblox-new-parental-controls-8747405.



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

chair—an obvious conflict of interest.[103] This calculated relationship exposes how Roblox manipulates public perception by using seemingly independent safety organizations as mouthpieces to shape the narrative in its favor.

79. FOSI CEO Stephen Balkam was also quoted in the *Newsweek* piece, claiming that Roblox was "top-of-class" for its safety features and even repeating Roblox's own party line that safety is "part of [Roblox's] DNA."[104] Again, this article omitted FOSI's ties to Roblox, financial and otherwise, thereby deceptively pushing a narrative of Roblox as a "safe" application for kids.

**F. <u>Roblox Acts as a Feeder App to Games Like Gacha Life.</u>**

**1. <u>Gacha Life publicly misrepresents itself as appropriate for all ages.</u>**

80. Launched in 2018 and developed by Lunime, Inc. ("Lunime"), Gacha Life is an online role-playing and story board creation game advertised for children ages 9 and above on the iOS App Store and rated "E" for everyone on Google Play.[105] An "E" rating on Google Play suggests the game is suitable for *all ages*, including toddlers.

81. Gacha Life users can play mini games, where they are rewarded for certain built-in achievements, Life Mode, where they are encouraged to interact with other users, and Studio Mode, where each user can create interactive scenes and storylines that involve other users.[106] All Gacha Life Studio Mode scenes can be recorded and exported as videos which can then be shared across other platforms such as YouTube, Discord and TikTok.[107] This feature has led to the creation of "GachaTubers" – Gacha Life players who create music videos, skits, movies, and even ongoing series that feature their Gacha Life characters.[108]

82. Gacha Life is easily accessible, including to children. It is free to download and

---

[103] *FOSI Welcomes Roblox Vice President as New Board Chair*, FOSI (Oct. 12, 2022), https://www.fosi.org/about-press/fosi-welcomes-roblox-vice-president-as-new-board-chair.

[104] ConnectSafely, *Supporters*, https://connectsafely.org/about-us/supporters/ (last accessed May 4, 2025).

[105] *Digital Safeguarding Threat Assessment, Gacha Heat – Harmful Content* (Sept. 16, 2021), https://f.hubspotusercontent10.net/hubfs/4019268/Digital%20Threat%20Assessments/Digital_Safeguarding_Threat_Assessment_GachaHeat_16.09.21.pdf

[106] *Lunime Gacha apps*, Australian Government – eSafety Commissioner (Jun. 5, 2025), https://www.esafety.gov.au/key-topics/esafety-guide/lunime-gacha-apps.

[107] *Lunime Gacha apps*, *supra* n.109; *see also Qustodio*, *supra* n.112.

[108] Ian Lecklitner, *The Pitched Battle to Keep the Popular Children's Game 'Gacha Life Safe for Kids,* Digital Culture – Mel Magazine (2021), https://melmagazine.com/en-us/story/gacha-life-porn-sex-videos.

play, and is available on gaming consoles, computers, tablets, and cellular devices.

83. Gacha Life is explicitly designed and marketed for children. The game utilizes "colorful characters, catchy music, and endless customization options" which makes it a "fun and creative outlet for children."[109] Trending content created by prominent "GachaTubers" further attract children to the game.[110]

84. Contrary to its public age ratings, Lunime's own privacy policy states that Gacha Life "does not address anyone under the age of 13."[111] Marketing the app as acceptable for children of all ages, while simultaneously disclaiming responsibility for users under thirteen reflects Lunime's calculated strategy of attracting young users while trying to avoid the legal obligations that come with knowingly serving those users.

85. Gacha Life has been downloaded over 100 million times[112] and was ranked the second most popular game in the United States in 2023.[113] Gacha Life's user base is overwhelmingly young with majority of the users ranging in ages between 9 and 14 years old.[114]

86. Gacha Life does not require users to create an account, only that they download the app. This way, Gacha Life bypasses the need for any identifying information, not even requiring a username. Any child of any age can play Gacha Life without parent involvement or knowledge. Furthermore, without age requirements, there is no way for Lunime to prevent or even monitor interactions between adults and children on Gacha Life.

**2. <u>Gacha Life's well-known facilitation of sexual exploitation.</u>**

87. Lunime designed, built, and continues to maintain a toxic environment that enables obscene material to flourish and allows predatory pedophiles to target, groom, and sexually exploit children for the sake of attracting more daily users. Despite being rated "E" for everyone on Google Play, the "Gacha community is known for repeatedly creating and releasing mature – and

[109] John Elmore, *supra* n. 4.
[110] *Id.*
[111] Lunime, Inc., *Privacy Policy* (October 29, 2018), https://lunime.com/privacypolicy/.
[112] AppBrain, *supra* n.3.
[113] *State of Mobile 2024: The Industry's Leading Report*, data.ai, https://mediaculture.fr/wp-content/uploads/2024/10/Usages-mobile-2024-datai-compresse.pdf (last accessed May 8, 2026).
[114] Ian Lecklitner, *supra* n.108.



PANISH | SHEA | RAVIPUDI LLP

sometimes extremely problematic – content using clips from a children's game."[115] Gacha Life hosts and promotes graphic, sexually explicit content without any content warnings, parental advisory notices, or disclosures to parents.

88. Similar to Roblox, Lunime offers developer tools which are designed, controlled, and made freely available to Gacha Life users in order to allow them to produce scenes and storylines in Studio Mode. The developer tools allow users to make their Gacha Life avatars dress, pose, and speak without limitation or moderation.[116] Gacha Life's character customization system originally included inappropriate features such as lingerie, even for characters appearing as children, skin-tone clothing which made characters appear nude, sexually suggestive poses, and pole dancing animations. Instead of limiting developer tools or even moderating content developed on the game, Lunime gave users and third parties unfettered access to use the tools without any meaningful safeguards which allowed experiences simulating sexual activity and BDSM to pervade Gacha Life.[117]

89. Gacha Life's unmoderated Studio Mode has given rise to a massive, well-documented phenomenon colloquially known as "Gacha Heat." Gacha Heat refers to user-generated content that depicts "child sexual abuse and exploitation, fetish/kink/BDSM/incitement of sexual violence . . . glorification of suicide, terminal illness, incest and teacher/student relationships."[118] Due to the lack of any age-verification or restriction, children of any age can be exposed and subjected to these scenes.[119] Predators often target young users and take advantage of their naivety in order to coerce them into participating in such activities on Gacha Life, which they often record and upload to other platforms.[120] YouTube has "thousands of Gacha Life videos

---

[115] Ian Lecklinter, *supra* n.108.

[116] Qustodio, *Is Gacha Life safe for kids? App safety guide for parents*, https://www.qustodio.com/en/blog/is-gacha-life-safe/ (Sept. 3, 2024); *see also Lunime Gacha Apps*, *supra* n.109.

[117] *See, e.g.,* YouTube, *Gacha Heat School 😨😨😨😨😨 pt. 1* (May 27, 2025), https://www.youtube.com/watch?v=nvVA-J5bS_Q; *see also* YouTube, *My new slave pt. 8 / gacha wedgie* ~ (Mar. 19, 2026), https://www.youtube.com/watch?v=BHq-3tEMvyk.

[118] Freedom from Abuse, *Parents Survival Guide for Screens and Teens*, https://www.ashford-park.surrey.sch.uk/attachments/download.asp?file=1873&type=pdf, (last accessed May 6, 2026).

[119] "With the current state of the *Gacha* community, it's nigh impossible for an innocent child to avoid the mature content . . . ." Ian Lecklinter, *supra* n.108

[120] "[S]earching online for Gacha Life stories and videos can easily bring up sexually explicit and violent content."*Qustodio*, *supra* n.112.



PANISH | SHEA | RAVIPUDI LLP

containing sexual and adult content;"[121] TikTok has over 13 million videos with the hashtag "#GachaHeat."[122] Even if a user is not directly subjected to these scenes, hashtags related to this content often "spill[] over into other Gacha Life hashtags on social media" meaning all users are still at risk of exposure to this content.[123]





*Gacha Life avatars depicted in BDSM*




**Gacha heat school 😳😳😳😳😳 part 1**



**My new slave pt 8/ gacha wedgie~**

*YouTube search results for "Gacha Heat"*[124]

90. Lunime played a direct role in enabling these rampant, sexually exploitative interactions. Lunime was fully aware that these scenes pervade its app, and allowed them to continue to exist unchecked, despite the ability to control or eliminate them.[125] Due to Lunime's failure to implement basic safeguards to prevent users from creating explicit content, Gacha Heat was able to expand into the widely spread phenomenon that it still is today. Not only does the existence of Gacha Heat content draw predators to the app, it emboldens them in their targeting of

[121] *Id.*
[122] *Digital Safeguarding Threat Assessment, supra* n.106.
[123] Qustodio, *supra* n. 116.
[124] YouTube, *supra* n.117.
[125] ". . . so many hackers, pedophiles, sexual content. I keep reporting them but the videos haven't gotten taken down." Brian Levine, *Increasing the Efficacy of Investigations of Online Child Sexual Exploitation*, University of Massachusetts Amherst (May 2022), https://scholarworks.umass.edu/server/api/core/bitstreams/0a5f8714-ee67-4c25-a6e9-d42bc15428de/content.

PANISH | SHEA | RAVIPUDI LLP

vulnerable children on other platforms.




*Twitter post seeking and normalizing inappropriate sexual relationships, along with hashtag* ***#pedopride***[126]

91. Even moreso than Roblox, Gacha Life has also enabled individuals to create an entire category of pornographic content. Using Lunime's tools and software, which promote and encourage video creation and distribution, users can make virtual sex videos between avatars on Gacha Life. XVideos, the same pornographic website with Roblox videos, has an entire category of Gacha Life videos and people have created entire websites dedicated to Gacha Life pornography.




*XVideos search results for Gacha Heat*

---

[126] *Id.*

PANISH | SHEA | RAVIPUDI LLP




*Website dedicated to Gacha Life pornography*

92. Just like Roblox, the online environment that Gacha Life hosts and enables starkly contradicts its representations of providing a product suitable for all ages. The existence of such clearly graphic and explicit content on its platform demonstrates Lunime's blatant disregard for the safety of its youngest users and reveals the company's prioritization of user engagement over its fundamental duty to protect young users.

93. Because of the environment and content allowed by Gacha Life, the app serves as another online platform of choice for predators seeking to groom, abuse, and exploit children. Predators are easily able to access tens of millions of children and freely move between inappropriate content and seemingly innocent games to take advantage of vulnerable users. By providing such easy access to predators, and failing to address the issue, Lunime has demonstrated reckless indifference to its fundamental obligation not to create and foster an environment that places children at significant risk of sexual exploitation.

94. Predators, such as the one who sexually exploited Plaintiff, often use Roblox to identify and target their victims and move to Gacha Life where they can exploit the children without limitation.[127]

### 3. <u>Gacha Life's refusal to implement any safety features.</u>

95. Gacha Life failed to implement simple measures that would have protected children using its app. For example, despite having the ability to require basic identity verification, Gacha

[127] *See generally* Qustodio, *supra* n.116



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

Life instead chose to allow users to create accounts without providing their name or email address—a policy that enables predators to easily create multiple anonymous accounts. Lunime also could have required children to obtain parental approval prior to downloading the app—a fundamental protection against predators—but refused to do so. Lunime could have placed a higher age rating on its application in the App Store and Google PlayStore, to signal to parents that the app presented risks for children. Lunime also could have provided clear warnings to parents about the presence of sexual predators on the platform, so that parents could make an informed decision about allowing their child on the platform and/or educate their child on how to stay safe on the platform. Lunime could also have provided clear warnings to children about the presence of sexual predators on the platform, and instructed children on how to stay safe on the platform.

96. Gacha Life's lack of safety features is widely known throughout the Gacha Life community. A 2022 peer-reviewed academic study by researchers at the University of Massachusetts, Amherst and the University of California, Berkeley analyzed over 3.2 million user-generated app store reviews across 100 applications and spanning a decade.[128] The study identified Gacha Life specifically among platforms generating significant documented reports of sexual abuse, predators, and dangerous interactions between minors and adults.[129] Gacha Life has averaged over 50 reports of explicit or dangerous content per quarter since 2019.[130]

97. One Gacha Life user reported "[f]rom our observations and experiences, Lunime appears to be entirely incompetent and irresponsible when it comes to handling its huge community . . . there are no safety features in place."[131] The user continued on to say that Gacha Life "could even be placed on the same level as a game like Roblox." [132] Even Lunime's founder personally posted on the platform X on January 4, 2020, to address the issue of "inappropriate Gacha Life content," instructing users to "[l]eave the gross stuff in 2019."[133] This

[128] Brian Levine, et al., *Indications of Child Sexual Abuse Revealed in App Store Reviews*, USENIX Symposium on Usable Privacy and Security (Aug. 7-9, 2022), https://farid.berkeley.edu/downloads/publications/kops22.pdf.
[129] *Id.*
[130] *Id.*
[131] Ian Lecklitner, *supra* n.110.
[132] *Id.*
[133] LuniDev, X (Jan. 4, 2020), https://x.com/LuniDev/status/1213695498252480512/photo/1.

acknowledgment came after the Gacha Heat phenomenon had been well established, confirming that Lunime was aware of the problem. Lunime chose to address the clear danger to children through a social media post instead of implementing effective safety and moderation features.




*Lunime founder "@LuniDev" post on X regarding explicit content on Gacha Life*

98. The continued existence of clearly graphic and explicit content on and related to its platform demonstrates Lunime's blatant disregard for the safety of its youngest users and reveals the company's prioritization of user engagement over its fundamental duty to protect young users.

99. Because of the environment and content allowed by Gacha Life, the game serves as another online platform of choice for predators seeking to find, groom, abuse, and exploit children. Predators are easily able to access tens of millions of children and freely move between inappropriate content and popular games to identify and target vulnerable young users. By providing such easy access to predators, and failing to address the issue, Gacha Life has demonstrated reckless indifference to its fundamental obligation not to create and foster an environment that places children at significant risk of sexual exploitation.

100. Gacha Life does not operate in isolation; there are systematic patterns of exploitation on apps like Roblox and Gacha Life which follow a predictable and preventable sequence that the both companies have known about and facilitated for years. The ability to hide behind child-like avatars and seemingly innocent games turn these apps into a predator's



PANISH | SHEA | RAVIPUDI LLP

playground. Due to the lack of effective safety features, predators are able to use Roblox and Gacha Life to normalize and subject children to extremely graphic sexual interactions. This is exactly what happened to Plaintiff.

**V. <u>PLAINTIFF-SPECIFIC ALLEGATIONS</u>**

101. As a young child, Plaintiff had a very sweet, innocent demeanor; she was nice to everyone and rarely got in trouble. She struggled with delayed speech and certain fixations, which prompted her parents to get her medically assessed. At 7 years old, Plaintiff showed signs of Autism, although she was not formally diagnosed until middle school. When Plaintiff was approximately 9 years old, she was graphically sexually exploited by a dangerous predator through Defendants' apps. As the result of Defendants' reckless disregard for child safety, Plaintiff suffered major psychological trauma and is permanently harmed.

102. Plaintiff began using Roblox around age 8, seeking connection and entertainment. It was difficult for Plaintiff to socialize with other children because of her struggles with speech and behaviors linked to her Autsim. Roblox offered a way for her to interact with other children and comfortably build her social skills.

103. Due to Roblox's constant messaging on child safety, Plaintiff's parents truly believed that Roblox was safe for children. The device Plaintiff used to play Roblox was only connected to WiFi, unable to make any calls or texts. Plaintiff's parents believed this precaution was sufficient to prevent Plaintiff from directly communicating with strangers outside of the game. Plaintiff's parents trusted Roblox's supposed parental controls and believed that Roblox was keeping its promises to monitor Plaintiff's activity and prevent any inappropriate conduct. As discussed above, Roblox spent considerable time and money publicly touting the safety and security on the app. This created the public perception that Roblox had created a safe environment for kids. Plaintiff and her parents saw Roblox as a tool for her to learn how to interact with other children. Unbeknownst to them at the time, this was nothing more than a false façade of safety.

104. By this time, Roblox had long been aware – from countless police reports and incidents reported in the media – that its app was widely used by predators to target, groom, and sexually exploit children. Yet rather than warn parents or take other measures to protect children



PANISH | SHEA | RAVIPUDI LLP

from harm, Roblox continued with its deceptive campaign to portray the app as safe for children and to conceal information that it knew about the pervasive predatory conduct that its app enabled and facilitated.

105. On Roblox, Plaintiff was contacted by a man pretending to be a child. This man, in fact, was an adult predator. The predator engaged in a pattern of calculated grooming behavior that Roblox has known about and enabled for years. He initially engaged in innocent conversation but gradually escalated to sexual topics and explicit exchanges. The predator asked personal information about Plaintiff regarding her appearance and physical location, which Plaintiff shared with the predator.

106. The predator then convinced Plaintiff to transition their conversations to Gacha Life. Plaintiff believed that Gacha Life was a safe place for her to continue playing with her new friend. Once on Gacha Life, the predator dramatically increased the explicit nature of his conversations with Plaintiff, discussing sexual actions and positions. Eventually, the predator convinced Plaintiff to strip her avatar as he did the same. Neither user was prevented from doing so by Gacha Life. The predator then instructed Plaintiff on how to engage in sexual interactions in the game, showing her how to pose her avatar in sexually suggestive ways and introducing items such as whips and handcuffs. The predator took advantage of Plaintiff's young age and naivety to sexually exploit her through her avatar.

107. The predator verbalized and instructed Plaintiff to verbalize the sexual actions through the chat function. Not only was Plaintiff forced to act out sexual interactions, but she was now describing her own sexual abuse to the predator which further exposed Plaintiff to graphic actions and language and deepened her psychological damage. The predator quickly introduced Plaintiff to BDSM and subjected Plaintiff to graphic sexual interactions while verbalizing his actions through the chat function. The predator forced Plaintiff into a dominant-submissive virtual sexual relationship with him. He increasingly demanded that Plaintiff engage in BDSM role play with him in order for them to play other games. Plaintiff believed that her new friend would abandon her if she did not abide by the demands.

108. Plaintiff eventually became hyper fixated on sex and BDSM both in and out of the



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

game. At just 9 years old, she began writing extremely graphic erotica which depicted dominant-submissive sexual interactions involving whips and chains.

109. Plaintiff's behavior began to noticeably change – she was no longer the sweet, innocent little girl her parents knew her to be. She became secretive, isolating herself from the family, and interacting differently with both children and adults. Puzzled and concerned, her parents checked her device and discovered a plethora of extremely graphic and sexually explicit conversations with this predator. Soon after, Plaintiff's parents discovered her journals and were mortified and shocked that their 9-year-old daughter was even capable of writing such explicit materials.

110. Upon making such a frightening discovery, Plaintiff's parents prohibited Plaintiff from playing Roblox. However, the damage was done and Plaintiff's innocence was forever stolen. She was constantly thinking or talking about sex and BDSM, either in her journals or to her friends at school.

## VI. <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>
### <u>FRAUDULENT CONCEALMENT AND MISREPRESENTATION</u>
### (By Plaintiff Against Each Defendant)

111. Plaintiff incorporates by reference all preceding allegations.

112. Each Defendant possessed superior and exclusive knowledge about the dangers posed by its app to child users, acquired through internal reviews, employee reports, external studies, police reports, and widespread media coverage.

113. Each Defendant was under a duty to tell the public, users, and their parents the truth and to disclose the defective conditions of its app and that the app posed serious safety risks to child users because each Defendant possessed superior knowledge about the dangers of its app through internal reviews, external studies known to each Defendant, and parent and police reports made to each Defendant. Instead of disclosing the truth, each Defendant engaged in a widespread public campaign to tout the safety of its app in the media, and in the materials provided to potential users of the app, as described above.

114. Each Defendant made numerous false representations about the safety of its app, as

PANISH | SHEA | RAVIPUDI LLP

described above, which were specific and widespread. Plaintiff and the public at large relied on each Defendant's false representations in deciding to allow children to play on the app.

115. Each Defendant breached its duty to the public, users, and their parents by concealing and failing to disclose the serious safety risks presented by its app. Even though each Defendant knew of those risks based on its internal reviews, external studies known to each Defendant, and parent and police reports made to each Defendant, each Defendant intentionally concealed those risks to not lose users and revenue, and to induce parents to allow their children to use its app. Such risks were known only to each Defendant, and the public, users, and their parents, including Plaintiff, could not have discovered such serious safety risks.

116. The public, users, and their parents, including Plaintiff, did not know of the serious safety risks posed by the design of each Defendant's app, which were known by each Defendant.

117. By intentionally concealing and failing to disclose defects inherent in the design of its app, each Defendant knowingly and recklessly misled the public, users, and their parents, including Plaintiff, into believing that its app was safe for children to use.

118. Each Defendant knew that its concealment, omissions, and misrepresentations were material. A reasonable person, including Plaintiff, would find information about the risk of grooming, sexual abuse, sexual exploitation, and other serious risks associated with the use of each Defendant's app, to be important when deciding whether to allow children to use it.

119. Each Defendant intended to deceive the public, users, and their parents, including Plaintiff, by making misrepresentations and concealing the defects in the design of its app, which made the app unsafe.

120. As a direct and proximate result of each Defendant's concealment of material information and misrepresentations, Plaintiff was not aware and could not have been aware of the facts that each Defendant concealed, and therefore justifiably and reasonably believed that each Defendant's app was safe for children to use.

121. If the serious safety risks presented by the design of each Defendant's app had been disclosed, the public, users, and their parents, including Plaintiff, reasonably would have acted

differently and/or would have not permitted children to use the app.

122. As a direct and proximate result of each Defendant's concealment of material information and misrepresentations, Plaintiff sustained serious injuries and harm.

123. Each Defendant's concealment of material information and misrepresentations were a substantial factor in causing harm to Plaintiff.

124. Each Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

125. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**SECOND CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(By Plaintiff Against Each Defendant)**

126. Plaintiff incorporates by reference all preceding allegations.

127. As set forth in more detail above, each Defendant knew about the defective conditions of its app and that the app posed serious safety risks to child users. Instead of disclosing the truth, each Defendant engaged in a widespread public campaign to tout the safety of its platform in the media, and in the materials provided to potential users of the app, as described above.

128. Each Defendant made numerous false representations about the safety of its app, as described above, which were specific and widespread. Plaintiff and the public at large relied on each Defendant's false representations in deciding to allow children to play on the app.

129. By making numerous material representations downplaying any potential harm associated with its app and reassuring the public, users, and their parents, including Plaintiff, that its app was safe, each Defendant negligently misled the public, users, and their parents, including

PANISH | SHEA | RAVIPUDI LLP

Plaintiff, into believing its app was safe for children to use.

130. Each Defendant had no reasonable grounds for believing that its misrepresentations that its app was safe for children to use were true.

131. As a direct and proximate result of each Defendant's material omissions, misrepresentations, and concealment of material information, Plaintiff was not aware and could not have been aware of the facts that each Defendant misstated, and therefore justifiably and reasonably believed that each Defendant's app was safe for use.

132. As a direct and proximate result of each Defendant's material omissions and misrepresentations, Plaintiff sustained serious injuries and harm.

133. Plaintiff's reliance on each Defendant's misrepresentations about the safety of its app were substantial factors in causing harm to Plaintiff.

134. Each Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish them and deter others from like conduct.

135. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## THIRD CAUSE OF ACTION
## NEGLIGENCE - GENERAL
**(By Plaintiff Against Each Defendant)**

136. Plaintiff incorporates by reference all preceding allegations.

137. At all relevant times, each Defendant developed, set up, managed, maintained, operated, marketed, advertised, promoted, supervised, controlled, and benefited from its respective app used by Plaintiff.

138. Each Defendant owed Plaintiff a duty to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app and not to create an unreasonable risk of harm from and in the

PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

use of its app (including an unreasonable risk of grooming, sexual abuse, and sexual exploitation, and other associated physical or mental injuries); to protect Plaintiff from unreasonable risk of injury from and in the use of its app; and not to invite, encourage, or facilitate youth, such as Plaintiff, to foreseeably engage in dangerous or risky behavior through, on, or as a reasonably foreseeable result of using its app. These duties govern Defendants' own specific actions and are based on direct actions Defendants took in developing their apps and features.

139. In addition, each Defendant owed a special relationship duty to Plaintiff to protect him against harm caused by its app and employees or by other users. This special relationship duty is based on the following:

(a) As businesses, Defendants owe a duty to protect customers against reasonably foreseeable criminal acts of third parties and other dangers known to Defendants on their apps;

(b) Plaintiff, as a minor, was vulnerable and dependent on Defendants for a safe environment on their apps, and Defendants have superior ability and control to provide that safety with respect to activities that they sponsor or control;

(c) Plaintiff relied upon Defendants for protection against third-party misuse or misconduct;

(d) The special relationship Plaintiff had with Defendants substantially benefits Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the growth in users and user activity generated by children;

(e) Defendants were far more to Plaintiff than a business. Defendants provided Plaintiff with opportunities for social interaction and a discrete community of other users. Plaintiff was dependent on Defendants to provide structure, guidance, and a safe environment;

(f) Defendants have superior control over their app environments and the ability to protect their users. Defendants impose a variety of rules and restrictions to supposedly maintain a safe and orderly environment. Defendants employ internal

staff to enforce these rules and restrictions and can monitor and discipline users when necessary. Defendants have the power to influence Plaintiff's values, consciousness, relationships, and behaviors; and

(g) Defendants have voluntarily undertaken a responsibility to keep children safe on their apps. As alleged above, Defendants have publicly stated that they take steps to keep children safe on their apps and therefore have undertaken a duty to act reasonably in taking such steps.

140. Plaintiff was a foreseeable user of each Defendant's app.

141. Each Defendant knew that minors such as Plaintiff would use its app.

142. Each Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Plaintiff's use of its app.

143. Each Defendant knew or, by the exercise of reasonable care, should have known that the reasonably foreseeable use of its respective app (as developed, set up, managed, maintained, supervised, and operated by that Defendant) was dangerous, harmful, and injurious when used by youth such as Plaintiff in a reasonably foreseeable manner.

144. At all relevant times, each Defendant knew or, by the exercise of reasonable care should have known that its respective app (as developed, set up, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Plaintiff, which risks were known and knowable, including in light of the internal data and knowledge each Defendant had regarding its app.

145. Each Defendant knew, or by the exercise of reasonable care, should have known that ordinary child users of its respective app, such as Plaintiff, would not have realized the potential risks and dangers of using the app, including a risk of grooming, sexual abuse, and sexual exploitation, which foreseeably can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder,

PANISH | SHEA | RAVIPUDI LLP

insomnia, eating disorders, death, and other harmful effects.

146. Each Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

147. Each Defendant could have avoided Plaintiff's injuries with minimal cost, including, for example, by not including certain features in its respective app which harmed Plaintiff.

148. Imposing a duty on Defendants would benefit the community at large.

149. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Plaintiff.

150. Each Defendant owed a heightened duty of care to youth users of its app because children's brains are not fully developed, meaning young people are more neurologically vulnerable than adults to abusive contact facilitated by Defendants' apps because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

151. Each Defendant breached its duties of care owed to than through its affirmative malfeasance, actions, business decisions, and policies in the development, set up, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its respective app. These breaches are based on Defendants' own actions in managing their own apps made available to the public, independent of any actions taken by a third party. Those breaches include but are not limited to:

(a) Including features in their apps that, as described above, are currently structured and operated in a manner that unreasonably creates or increases the foreseeable risk of grooming, sexual abuse, and sexual exploitation to youth, including Plaintiff;

(b) Including features in their apps that, as described above, are currently structured and operated in a manner that unreasonably creates or increases the foreseeable risk of harm to the physical and mental health and well-being of youth users, including Plaintiff, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion,



PANISH | SHEA | RAVIPUDI LLP

and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, and other harmful effects;

(c) Maintaining unreasonably dangerous features in their apps after notice that such features, as structured and operated, posed a foreseeable risk of harm to the physical and mental health and well-being of youth users;

(d) Facilitating unsupervised and/or hidden use of their respective apps by youth, including by adopting protocols that allow youth users to change their own safety settings or parental controls, and create multiple and private accounts; and

(e) Inviting children on their apps and marketing to children when Defendants knew that their apps, as designed, were not safe for children.

152. Each Defendant breached its duties of care owed to Plaintiff through its nonfeasance, failure to act, and omissions in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its respective app. These breaches are based on Defendants' own actions in managing their own apps made available to the public, independent of any actions taken by a third party. Those breaches include but are not limited to:

(a) Failing to implement effective parental controls;

(b) Failing to screen users before allowing them on the app;

(c) Failing to implement effective parental notifications, such as when a child messages another user, particularly an adult user, or when a child interacts with accounts that have been blocked by other users or suspended in the past;

(d) Failing to require adult users to provide a phone number when signing up for an account;

(e) Failing to implement pop-up safety notices within chats and games to warn users

PANISH | SHEA | RAVIPUDI LLP

about inappropriate behavior;

(f) Failing to ban IP and MAC addresses of accounts associated with known abusers;

(g) Failing to set default safety settings to the most protective options;

(h) Having an open chat function;

(i) Failing to provide a transcript of a child's communications to the parent;

(j) Failing to implement reasonably available means to monitor for, report, and prevent the use of their apps by sexual predators to victimize, abuse, and exploit youth users;

(k) Failing to provide effective mechanisms for youth users and their parents/guardians to report abuse or misuse of their apps;

(l) Failing to implement effective protocols to verify ages and identity of all users;

(m) Failing to place reasonable age restrictions on their apps;

(n) Failing to separate adults from children on the apps by, for example, creating separate apps for children;

(o) Failing to adequately fund their trust and safety programs; and

(p) Others as set forth herein.

153. A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its app in a manner that is safer for and more protective of youth users like Plaintiff.

154. At all relevant times, Plaintiff used each Defendant's app in the manner in which it was intended to be used.

155. As a direct and proximate result of each Defendant's breach of one or more of its duties, Plaintiff was harmed. Such harms include the sexual exploitation of Plaintiff by a child predator and a cascade of resulting negative effects, including but not limited to damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound

PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

mental health issues such as depression, anxiety, and other harmful effects.

156. Each Defendant's breach of one or more of its duties was a substantial factor in causing harms and injuries to Plaintiff.

157. Plaintiff was injured from using both of Defendants' defective apps through no fault of her own. The fact that Plaintiff was injured by using both of Defendants' apps means that Defendants are each jointly and severally responsible for the injuries caused by any one of Defendants' apps and the burden shifts to Defendants to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

158. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' apps.

159. Each Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish the Defendants and deter others from like conduct.

160. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE – FAILURE TO WARN
**(By Plaintiff Against Each Defendant)**

161. Plaintiff incorporates by reference all preceding allegations.

162. At all relevant times, each Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefited from its app used by Plaintiff.

163. Plaintiff was a foreseeable user of each of Defendant's apps.

164. Each Defendant knew, or by the exercise of reasonable care should have known, that its app posed serious dangers when used in a reasonably foreseeable manner by minors, and

that ordinary minor users would not appreciate the risks of grooming, sexual abuse, and sexual exploitation to which use of the app exposed them.

165. Each Defendant knew, or by the exercise of reasonable care, should have known, that ordinary minor users, such as Plaintiff, would not have realized the potential risks and dangers of its app, including a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

166. Each Defendant owed a duty to provide adequate warnings to minor users and their parents about the known risks of its app, including: the prevalence of predators; the ease with which predators circumvent safety features; the absence of meaningful age verification; the platform's use for CSAM production and distribution; and the Roblox-to-Gacha Life predation pipeline.

167. Had Plaintiff received proper or adequate warnings about the risks of each Defendant's apps, Plaintiff would have heeded such warnings.

168. Each Defendant knew or, by the exercise of reasonable care, should have known that its app posed risks of harm to youth. These risks were known and knowable in light of Defendants' own internal data and knowledge regarding their apps at the time of development, design, marketing, promotion, advertising, and distribution to Plaintiff.

169. Because Defendants' conduct created the risk that child users of their apps would be subject to grooming, sexual abuse, and sexual exploitation, Defendants each owed a duty to all reasonably foreseeable users, including but not limited to minor users and their parents, to provide adequate warnings about the risk of using Defendants' apps that were known to Defendants, or that Defendants should have known through the exercise of reasonable care.

170. In addition, as described above, each Defendant owed a special relationship duty to



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

Plaintiff to protect her against harm caused by its app and employees or by other users.

171. Each Defendant owed a heightened duty of care to minor users and their parents to warn about its app's risks because children's brains are not fully developed, resulting in a diminished capacity to make responsible decisions regarding contact with strangers online. Children are also more neurologically vulnerable than adults to abusive contact facilitated by Defendants' apps because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

172. Each Defendant breached this duty by failing to provide adequate warnings and by affirmatively misrepresenting its platforms as safe--actively concealing the very risks about which warnings were required. Had adequate warnings been provided, Plaintiff's parents would have heeded them and would not have permitted Plaintiff to use the apps.

173. A reasonable company under the same or similar circumstances as Defendants would have used reasonable care to provide adequate warnings to consumers, including the parents of minor users, as described herein.

174. At all relevant times, each Defendant could have provided adequate warnings to prevent the harms and injuries described herein.

175. As a direct and proximate result of each Defendant's breach of its duty to provide adequate warnings, Plaintiff was harmed and sustained the injuries set forth herein. Each Defendant's failure to provide adequate and sufficient warnings was a substantial factor in causing the harms to Plaintiff.

176. Plaintiff was injured from using both of Defendants' defective apps through no fault of her own. The fact that Plaintiff was injured by using both of Defendants' apps means that Defendants are each jointly and severally responsible for the injuries caused by any one of Defendants' apps and the burden shifts to Defendants to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

177. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' apps.

178. The conduct of each Defendant, as described above, was intentional, fraudulent,

willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

179. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE – UNREASONABLE DESIGN**
**(By Plaintiff Against Each Defendants)**

180. Plaintiff incorporates by reference all preceding allegations.

181. At all relevant times, each Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefited from its respective app used by Plaintiff.

182. Each Defendant knew or, by the exercise of reasonable care, should have known, that its app was dangerous, harmful, and injurious when used by youth in a reasonably foreseeable manner.

183. Each Defendant knew or, by the exercise of reasonable care, should have known that its respective app posed risks of harm to youth. These risks were known and knowable in light of Defendants' own internal data and knowledge regarding their apps at the time of the apps' development, design, marketing, promotion, advertising, and distribution to Plaintiff.

184. Each Defendant knew, or by the exercise of reasonable care, should have known, that ordinary minor consumers such as Plaintiff would not have realized the potential risks and dangers of its app. Those risks include grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety,



PANISH | SHEA | RAVIPUDI LLP

suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

185. Each Defendant owed a duty to all reasonably foreseeable users to design a safe app.

186. Each Defendant owed a heightened duty of care to minor users of its app because children's brains are not fully developed, resulting in a diminished capacity to make responsible decisions regarding contact with strangers online. Children are also more neurologically vulnerable than adults to abusive contact facilitated by Defendants' apps because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

187. Plaintiff was a foreseeable user of each Defendant's app.

188. Each Defendant knew that minors such as Plaintiff would use its app.

189. Each Defendant breached its respective duty in designing its app.

190. Each Defendant breached its respective duty by failing to use reasonable care in the design of its app by negligently designing the app with features that specifically allow predators to find, groom, exploit, and abuse children, as described herein.

191. Each Defendant breached its respective duty by designing an app that was less safe to use than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

192. Each Defendant breached its respective duty by failing to use reasonable care in the design of its app by negligently designing its app with features as described above that created or increased the risk of grooming, sexual abuse, and sexual exploitation for children, which can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

193. Each Defendant breached its respective duty by failing to use reasonable care to use



PANISH | SHEA | RAVIPUDI LLP

cost-effective, reasonably feasible alternative designs, including changes to the harmful features, and other safety measures, to minimize the harms described herein, including but not limited to:

(a) Requiring children have parental approval and a parent's email address to signup for an account;

(b) Effective parental controls;

(c) Effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls;

(d) Setting default safety settings to the most protective options, including blocking direct messaging between child and adult users, or only allowing messaging between adult users and a child with the parent's explicit permission to message the adult user;

(e) Requiring adults to provide a phone number when signing up for an account;

(f) Pop-up safety notices within chats and games to warn users about inappropriate behavior;

(g) Preventing strangers from sending Robux to child accounts, and preventing children from sending Robux to strangers' accounts;

(h) Banning IP and MAC addresses of accounts associated with known abusers;

(i) Controlled chat option;

(j) Providing a transcript of a child's communications to the parent;

(k) Implementing reporting protocols to allow users or visitors of Defendants' apps to report CSAM and adult predator accounts specifically without the need to create or

PANISH | SHEA | RAVIPUDI LLP

log in to the apps prior to reporting;

(l) Robust age and identity verification;

(m) Reasonable age restrictions;

(n) Separating adults from children by, for example, creating separate apps for children; and

(o) Others as set forth herein.

194. Alternative designs that would reduce the dangerous features of Defendants' respective apps were available, would have served effectively the same purpose as Defendants' defectively designed apps, and would have reduced the gravity and severity of danger each Defendant's app posed minor users.

195. A reasonable company under the same or similar circumstances as each Defendant would have designed a safer app.

196. At all relevant times, Plaintiff used each Defendant's app in the manner in which it was intended by each Defendant to be used.

197. As a direct and proximate result of each Defendant's breached duties, Plaintiff was harmed. Each Defendant's design of its respective app was a substantial factor in causing Plaintiff's harms and injuries.

198. Plaintiff injured from using both of Defendants' defective apps through no fault of her own. The fact that Plaintiff was injured by using both of Defendants' apps means that Defendants are each jointly and severally responsible for the injuries caused by any one of Defendants' apps and the burden shifts to Defendants to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

199. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using each Defendant's app.

200. The conduct of each Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of

PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

201. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**SIXTH CAUSE OF ACTION**
**NEGLIGENT UNDERTAKING**
**(By Plaintiff Against Each Defendant)**

202. Plaintiff incorporates by reference all preceding allegations.

203. Each Defendant rendered parental control services and account safety services to Plaintiff.

204. Defendants made numerous statements, as outlined above, claiming in substance that their parental controls and account safety services were highly effective at protecting users from the type of harm that Plaintiff suffered.

205. Each Defendant knew, or reasonably should have known, that effective parental control and account safety services were necessary for the protection of minor users.

206. Each Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

207. Each Defendant could have avoided Plaintiff's injuries with minimal cost, including, for example, by implementing parental control and account safety services that were effective and that would prevent child users from being contacted by adult accounts or strangers' accounts generally.

208. Imposing a duty on Defendants would benefit the community at large.

209. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to children.

210. Each Defendant owed a heightened duty of care to minor users and their parents to implement parental control and account safety services that were effective and that would prevent child users from being contacted by adult accounts or strangers' accounts generally.

211. Plaintiff relied on each Defendant exercising reasonable care in undertaking to

render parental control and account safety services.

212. Each Defendant breached its duty of undertaking by failing to use reasonable care in rendering its parental control and account safety services to prevent child users from being contacted by adult accounts or strangers' accounts generally.

213. Each Defendant failed to exercise reasonable care in rendering these parental control and account safety services.

214. Each Defendant's failure to exercise reasonable care increased the risk of and was a substantial factor in causing harm to Plaintiff.

215. Each Defendant's breach of one or more of its duties was a substantial factor in causing harms and injuries to Plaintiff.

216. Plaintiff was injured from using both of Defendants' defective apps through no fault of her own. The fact that Plaintiff was injured by using both of Defendants' apps means that Defendants are each jointly and severally responsible for the injuries caused by any one of Defendants' apps and the burden shifts to Defendants to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

217. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' apps.

218. The conduct of each Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages.

219. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

//

//

//

PANISH | SHEA | RAVIPUDI LLP

**SEVENTH CAUSE OF ACTION**
**STRICT LIABILITY – DESIGN DEFECT**
**(By Plaintiff Against Each Defendant)**

220. Plaintiff incorporates by reference all preceding allegations.

221. At all relevant times, each Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from its product used by Plaintiff.

222. These products were designed, manufactured, maintained, controlled, and distributed from the respective California headquarters of each Defendant.

223. Each Defendant's product was designed and intended to be a gaming and/or communication product. The software and architecture of each product is the same for every user that logs on or signs up for an account. These products are uniformly defective and pose the same danger to each minor user.

224. Each Defendant's product is distributed and sold to the public through retail channels (*e.g.*, the Apple App "Store" and the Google Play "Store").

225. Each Defendant's product is marketed and advertised to the public for the personal use of the end-user/consumer.

226. Each Defendant defectively designed its product to allow children to come into contact with child predators. Children are particularly unable to appreciate the risks posed by the products.

227. The defects in the design of each Defendant's product existed prior to the release of these products to Plaintiff and the public, and there was no substantial change to Defendants' products between the time of their upload by each Defendant to public or retail channels (*e.g.*, the App Store or Google Play) and the time of their distribution to Plaintiff via download or URL access.

228. Plaintiff used these products as intended, and each Defendant knew or, by the exercise of reasonable care, should have known that Plaintiff would use these products without inspection for its dangerous nature.

229. Each Defendant defectively designed its product to appeal to adult predators by

making it easy to find children and enabled their contact, grooming, sexual exploitation, and sexual abuse of children, including Plaintiff.

230. Each Defendant failed to test the safety of the features it developed and implemented for use on its product. When each Defendant did perform some product testing and had knowledge of ongoing harm, it failed to adequately remedy its product's defects or warn Plaintiff.

231. Each Defendant's product is defective in design and poses a substantial likelihood of harm for the reasons set forth herein, because the products fail to meet the safety expectations of ordinary consumers when used in an intended or reasonably foreseeable manner, and because the products are less safe than an ordinary consumer would expect when used in such a manner. Children and teenagers are among the ordinary consumers of Defendants' products. Indeed, each Defendant markets, promotes, and advertises its respective product to pre-teen and young consumers. Pre-teen and young consumers, and their parents and guardians, do not expect Defendants' products to expose them to predators when the products are used in their intended manner by their intended audience. They do not expect the features embedded by Defendants in their products to make it easy for child predators to sign-up for accounts and find children, groom children, and sexually exploit children. They do not expect Defendants' revenue and profits to be directly tied to predators' extortion of children.

232. Each Defendant's product is likewise defectively designed in that it creates an inherent risk of danger; specifically, a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

233. The risks inherent in the design of each Defendant's product significantly outweigh

PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

any benefits of such design.

234. Defendants could have utilized cost-effective, reasonably feasible alternative designs, including changes to the problematic features described above, to minimize the harms described herein, including, but not limited to:

(a) Requiring children have parental approval and a parent's email address to signup for an account;

(b) Effective parental controls;

(c) Effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls;

(d) Setting default safety settings to the most protective options, including blocking direct messaging between child and adult users, or only allowing messaging between adult users and a child with the parent's explicit permission to message the adult user;

(e) Requiring adults to provide a phone number when signing up for an account;

(f) Pop-up safety notices within chats and games to warn users about inappropriate behavior;

(g) Preventing strangers from sending Robux to child accounts, and preventing children from sending Robux to strangers' accounts;

(h) Banning IP and MAC addresses of accounts associated with known abusers;

(i) Controlled chat option;

(j) Providing a transcript of a child's communications to the parent;

(k) Implementing reporting protocols to allow users or visitors of Defendants' products to report child sex abuse material and adult predator accounts specifically without

the need to create or log in to the products prior to reporting;

(l) Robust age and identity verification;

(m) Reasonable age restrictions;

(n) Separating adults from children by, for example, creating separate apps for children; and

(o) Others as set forth herein.

235. Alternative designs were available that would prevent child predators from finding, grooming, and exploiting children, and which would have served effectively the same purpose of Defendants' products while reducing the gravity and severity of danger posed by those products' defects.

236. Plaintiff used Defendants' respective products as intended or in reasonably foreseeable ways.

237. The physical, emotional, and economic injuries of Plaintiff were reasonably foreseeable to Defendants at the time of their products' development, design, advertising, marketing, promotion, and distribution.

238. Each Defendant's product was defective and unreasonably dangerous when it left each Defendant's respective possession and control. The defects continued to exist through the products' distribution to and use by consumers, including Plaintiff, who used the products without any substantial change in the products' condition.

239. As manufacturers, designers and sellers, each Defendant had a duty to inform itself with the best knowledge of the risks and the defects of its product and each Defendant had such knowledge. Their victims, including Plaintiff, were powerless to protect themselves against unknown harms, and Defendants should bear the costs of their injuries.

240. Plaintiff was injured as a direct and proximate result of each Defendant's respective defective designs as described herein. The defective design of the products used by Plaintiff was a substantial factor in causing harms to Plaintiff.

241. As a direct and proximate result of each Defendant's respective product's defective

PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

design, Plaintiff suffered serious and dangerous injuries.

242. Plaintiff was injured from using both of Defendants' defective products through no fault of her own. The fact that Plaintiff was injured by using both of Defendants' products means that Defendants are each jointly and severally responsible for the injuries caused by any one of Defendants' products and the burden shifts to Defendants to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

243. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' respective products.

244. The conduct of each Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

245. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## EIGHTH CAUSE OF ACTION
## STRICT LIABILITY – FAILURE TO WARN
**(By Plaintiff Against Each Defendant)**

246. Plaintiff incorporates by reference all preceding allegations.

247. At all relevant times, each Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from its product used by Plaintiff.

248. These products were designed, manufactured, maintained, controlled and distributed from the respective California headquarters of each Defendant.

249. Each Defendant's product was designed and intended to be a gaming and/or communication product. The software and architecture of each product is the same for every user

that logs on or signs up for an account. These products are uniformly defective and pose the same danger to each minor user.

250. Each Defendant's product is distributed and sold to the public through retail channels (*e.g.*, the Apple App "Store" and the Google Play "Store").

251. Each Defendant sold and distributed its respective product to Plaintiff in a defective and unreasonably dangerous condition by failing to adequately warn about the risk of harm to youth as described herein, including a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers.

252. Defendants were in the best position to know the dangers their products posed to consumers, including Plaintiff, as they had superior knowledge of the risks and dangers posed by their products and had exclusive knowledge of these risks at the time of development, design, marketing, promotion, advertising and distribution. Defendants had exclusive control of their products at all times relevant to this litigation.

253. Each Defendant's respective product is dangerous, to an extent beyond that contemplated by the ordinary user who used Defendants' products, because they enable predators to find, groom, abuse, and exploit children.

254. Each Defendant knew or, by the exercise of reasonable care, should have known that its respective product posed risks of harm to youth considering its own internal data and knowledge regarding its product at the time of development, design, marketing, promotion, advertising, and distribution.

255. These risks were known and knowable in light of Defendants' own internal data and knowledge regarding their products at the time of the products' development, design, marketing, promotion, advertising, and distribution to Plaintiff.

256. Defendants' products are defective and unreasonably dangerous because, among other reasons described herein, each Defendant failed to exercise reasonable care to inform users

that, among other things:

(a) Sexual predators use Defendants' products to find, contact, groom and abuse children with alarming frequency;

(b) Sexual predators use Defendants' products to solicit, produce, and distribute CSAM with alarming frequency;

(c) Sexual predators target young children for CSAM on Defendants' products with alarming frequency;

(d) Sexual predators use Robux to coerce children into sending them nude photos or engaging in other types of sexually explicit behavior;

(e) Defendants' products are designed in a way that enables and increases risk of exposure to predators and resulting sexual exploitation;

(f) Defendants' products cause grooming, sexual abuse, and sexual exploitation, and its resultant physical and mental injuries;

(g) Use of Defendants' products can increase risky and uninhibited behavior in children, making them easier targets to adult predators for sexual exploitation, sextortion, and CSAM;

(h) Use of Defendants' products can normalize abuse and pornography, leading children to abuse other children either contemporaneously or later when the children are older;

(i) New users of Defendants' product can identify themselves as minors, begin to use the product, and do so indefinitely, without ever receiving a safety warning, and without ever having to provide information so that Defendants can warn the users' parents or guardians;

(j) Defendants' failure to verify ages allows children to bypass parental controls, safety features, and default settings;

(k) The likelihood and severity of harms is greater for children;

(l) The likelihood and intensity of these harmful effects is exacerbated by the

PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

interaction of each product's features with one another; and

(m) Others as set forth herein.

257. Plaintiff was a foreseeable user of each Defendant's product.

258. Ordinary minor users would not have recognized the potential risks of Defendants' products when used in a manner reasonably foreseeable to Defendants.

259. Had Plaintiff received proper or adequate warnings or instructions as to the risks of using each Defendant's product, Plaintiff would have heeded the warnings and/or followed the instructions.

260. Each Defendant's failures to adequately warn Plaintiff about the risks of their defective products were a proximate cause and a substantial factor in the injuries sustained by Plaintiff.

261. Plaintiff was injured from using both of Defendants' defective products through no fault of her own. The fact that Plaintiff was injured by using both of Defendants' products means that Defendants are each jointly and severally responsible for the injuries caused by any one of Defendants' products and the burden shifts to Defendants to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

262. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' products.

263. The conduct of each Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

264. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

//

PANISH | SHEA | RAVIPUDI LLP

## VII. PRAYER FOR DAMAGES

WHEREFORE, Plaintiff A.Z.R, by and through her Guardian Ad Litem, Scott R. prays for relief against DEFENDANTS as follows:

1. For general damages (also known as non-economic damages), including but not limited to, past and future pain and suffering for the mental and emotional distress damages suffered by Plaintiff, in an amount in excess of the jurisdictional minimum, according to proof against all Defendants.

2. For special damages (also known as economic damages), including but not limited to past and future hospital, medical, professional, and incidental expenses as well as past and future loss of earnings, loss of opportunity, and loss of earning capacity, in excess of the jurisdictional minimum, according to proof against all Defendants.

3. For prejudgment and post-judgment interest, according to proof;

4. For damages for other economic losses, according to proof;

5. For punitive damages;

6. For such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: May 11, 2026 PANISH | SHEA | RAVIPUDI LLP

By: [signature]

Jesse Creed
Attorneys for Plaintiff